# Illinois Official Reports

## Appellate Court

*County of McLean v. States Self-Insurers Risk Retention Group, Inc.*,
2015 IL App (4th) 140628

| | |
|---|---|
| Appellate Court Caption | THE COUNTY OF McLEAN, JAMES SOUK, CHARLES REYNARD, and JOHN BROWN, Plaintiffs-Appellees, v. STATES SELF-INSURERS RISK RETENTION GROUP, INC., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0628 |
| Filed | June 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 13-MR-214; the Hon. Albert G. Webber, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Joel D. Bertocchi and Dana A. Rice (argued), both of Hinshaw & Culbertson LLP, of Chicago, and Duana J. Grage, of Hinshaw & Culbertson, of Minneapolis, Minnesota, for appellant.<br><br>Michael E. Raub (argued), of Heyl, Royster, Voelker & Allen, of Urbana, for appellees. |

| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| --- | --- |
| | Presiding Justice Pope and Justice Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1 In May 1994, authorities in McLean County arrested Alan Beaman for the August 1993 murder of Jennifer Lockmiller. In March 1995, a jury convicted Beaman of that offense, and the trial court subsequently sentenced him to 50 years in prison. In May 2008, however, the supreme court reversed Beaman's conviction, concluding that the State unlawfully withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *People v. Beaman*, 229 Ill. 2d 56, 890 N.E.2d 500 (2008). In January 2009, the State dismissed all charges against Beaman.

¶ 2 In April 2012, Beaman filed suit in federal court against McLean County; former McLean County State's Attorney Charles Reynard; former McLean County Assistant State's Attorney James Souk; and former McLean County Deputy Sheriff John Brown (collectively, plaintiffs), asserting (1) civil rights violations pursuant to section 1983 (42 U.S.C. § 1983 (2012)) and (2) several state-law tort claims, including malicious prosecution.

¶ 3 In April 2013, plaintiffs filed in the trial court a complaint for declaratory judgment, seeking a ruling that defendant, States Self-Insurers Risk Retention Group, Inc., was obligated to pay the costs of plaintiffs' legal defense against Beaman's federal lawsuit pursuant to an insurance policy that was in place when Beaman was exonerated. In June 2014, the court granted summary judgment in favor of plaintiffs, finding, for purposes of Beaman's malicious-prosecution claim, that the dismissal of the charges against him in January 2009–not his arrest or prosecution in the 1990s–constituted the date of the "occurrence" that resulted in his "personal injury" within the meaning of the insurance policy. Because the court concluded that Beaman's malicious-prosecution claim ripened during the policy period, it ordered defendant to pay the cost of plaintiffs' defense against Beaman's federal lawsuit.

¶ 4 Defendant appeals, arguing that the "occurrence" of Beaman's "personal injury" within the meaning of the insurance policy was his arrest and prosecution, not his exoneration. We agree and reverse.

¶ 5 I. BACKGROUND

¶ 6 The following facts were gleaned from the parties' pleadings and supporting exhibits on file.

¶ 7 Initially, for clarity, we note that three separate legal proceedings are relevant to this case: (1) the criminal prosecution, conviction, and ultimate exoneration of Beaman; (2) Beaman's

subsequent federal lawsuit against plaintiffs seeking damages for his wrongful conviction; and (3) plaintiffs' declaratory judgment action against their insurance provider, defendant. This appeal arises from a final judgment in the declaratory judgment action, in which the trial court ordered defendant to pay the costs of plaintiffs' defense against Beaman's federal lawsuit. The supreme court's decision overturning Beaman's conviction set forth the factual details underlying the State's prosecution of Beaman, which we need not repeat. See *Beaman*, 229 Ill. 2d at 59-71, 890 N.E.2d at 502-08. Suffice it to say, the parties do not dispute that Beaman was investigated, arrested, tried, convicted, and sentenced during the 1990s. The insurance policy at issue in this case was in place from March 2008 until March 2009, during which time the supreme court overturned Beaman's conviction and the State dismissed the charges against him.

¶ 8        Before turning to the declaratory judgment action and the insurance policy at issue in this appeal, we briefly review the allegations set forth in Beaman's federal lawsuit against plaintiffs.

¶ 9                        A. Beaman's Federal Lawsuit Against Plaintiffs

¶ 10        In April 2012, Beaman filed an amended complaint in the United States District Court for the Central District of Illinois, alleging, in pertinent part, that plaintiffs (along with other defendants who are not parties to this declaratory judgment action) concealed exculpatory evidence showing that (1) Beaman did not have the opportunity to murder Lockmiller and (2) another viable suspect existed. Beaman asserted that Reynard, Souk, and Brown were intimately involved in the murder investigation and the withholding of material, exculpatory evidence from Beaman and his defense counsel.

¶ 11        Beaman's complaint set forth the following individual counts pursuant to section 1983: (1) violation of Beaman's constitutional right to due process and a fair trial; (2) conspiracy to violate Beaman's constitutional right to due process and a fair trial; and (3) "failure to intervene" to prevent a violation of Beaman's right to due process and a fair trial. Additionally, Beaman's complaint set forth the following individual state-law claims: (1) malicious prosecution; (2) civil conspiracy; (3) intentional infliction of emotional distress; (4) *respondeat superior*; and (5) indemnification. (We note that each count of Beaman's complaint incorporated, by reference, his allegation that plaintiffs violated his constitutional rights by concealing exculpatory evidence.)

¶ 12                        B. Plaintiffs' Declaratory Judgment Action

¶ 13        In April 2013, plaintiffs filed the declaratory judgment action at issue in this appeal. In their complaint, plaintiffs alleged that defendant issued an insurance policy to McLean County for the period of March 2008 through March 2009, which provided coverage for the county and its employees against third-party claims for personal injury, bodily injury, and property damage. Plaintiffs asserted that the policy imposed a duty upon defendant to (1) pay all defense costs for plaintiffs and (2) indemnify plaintiffs for any judgment entered against them in Beaman's federal lawsuit. (We note that only defense costs are at issue in this appeal because, in July and August 2013, the federal district court dismissed plaintiffs from Beaman's lawsuit, with prejudice.)

The insurance policy defendant issued to plaintiffs from March 2008 until March 2009 contained the following pertinent provisions. (Italicized portions of the policy are set forth, as in the original policy document, to indicate terms for which the policy provided its own specific definition.)

Section I of the insurance policy provided, in pertinent part, as follows:

"COVERAGE PART I. PUBLIC ENTITY LIABILITY COVERAGE (*OCCURRENCE* COVERAGE)

A. Insuring Agreement

[Defendant] agrees to pay on behalf of the *insured* the *damages* *** which the *insured* becomes legally obligated to pay because of *bodily injury*, *personal injury*[,] or *property damage* to which Coverage Part I applies.

Coverage Part I applies only if the *bodily injury*, *personal injury*[,] or *property damage* is the result of an *occurrence* during the *policy period* and in the *coverage territory*."

Section IV, which set forth definitions of terms used in the policy, defined "damages" as including, among other things, the costs of defending against a legal claim. The policy defined "personal injury," in pertinent part, as follows:

"*Personal injury* means injury (other than *bodily injury* or *property damage*) caused by one or more of the following offenses:

1. False or wrongful arrest, detention, imprisonment[,] or malicious prosecution.

2. Wrongful entry or eviction or other invasion of the right of private occupancy ***.

3. A publication or utterance:

a. Of libel or slander or other defamatory or disparaging material;

b. In violation of an individual's right of privacy;

4. Piracy, plagiarism, unfair competition, idea misappropriation under implied contract, infringement of copyright, title or slogan, registered trade mark, service mark or trade name, arising out of the *insured's* advertising activities; or

5. Any act which gives rise to any liability under any federal civil rights statute, any state employment related law, or the Fair Labor Standards Act, if such act is committed during the policy period."

The policy defined "occurrence" as follows:

"With respect to *personal injury*, only the offenses defined under *personal injury*. For any claim for *personal injury*, the date of the *occurrence* is the date that the first offense took place or is alleged to have taken place."

2. *The Parties' Motions*

In November 2013, defendant filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2012)), arguing that the murder investigation and prosecution of Beaman, which happened almost 15 years before the policy period began, was the "occurrence" resulting in Beaman's personal injury.

¶ 20    In January 2014, plaintiffs filed a cross-motion for judgment on the pleadings, contending that (1) defendant was required to pay plaintiffs' defense costs in the federal lawsuit if the policy covered any one of Beaman's claims and (2) the policy covered Beaman's malicious-prosecution claim because an element of that tort was the termination of criminal proceedings against Beaman, which occurred when the State dismissed the charges against him during the policy period.

¶ 21    In February 2014, the trial court allowed plaintiffs to amend their motion for judgment on the pleadings by adding, as an alternative form of relief, a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2012)). Plaintiffs requested summary judgment because that form of relief, unlike a motion for judgment on the pleadings, allowed them to present the court with evidence outside the pleadings. Attached as an exhibit to plaintiffs' motion for summary judgment was the subsequent insurance policy defendant issued to McLean County for March 2010 to March 2011, which had different language than the policy in place from March 2008 to March 2009. Specifically, the subsequent policy defined "occurrence" as follows (underlined text indicates language not contained in the March 2008 to March 2009 policy):

> "With respect to *personal injury*, only the offenses defined as *personal injury*. For any *claim* for *personal injury*, or a series of related *personal injury* offenses, the date of the *occurrence* is the date that the first *personal injury* offense took place or is alleged to have taken place."

Plaintiffs claimed in their motion for summary judgment that defendant's modification of the definition of "occurrence" in the subsequent policy proved that the language in the earlier policy was ambiguous. Because defendant drafted the earlier policy, plaintiffs argued, any ambiguities must be construed strictly against defendant.

¶ 22                                          3. *The Trial Court's Judgment*

¶ 23    In June 2014, following a May 2014 hearing, the trial court granted plaintiffs' motion for summary judgment. In a written order, the court found that Beaman's personal-injury claims against plaintiffs were not actionable until the State dismissed the criminal charges against him in January 2009. Because that dismissal happened during the policy period, the court ordered defendant to pay the costs of plaintiffs' defense against Beaman's federal lawsuit.

¶ 24    This appeal followed.

¶ 25                                          II. ANALYSIS

¶ 26    Defendant argues that the "occurrence" of Beaman's "personal injury" within the meaning of the insurance policy was his arrest and prosecution, not his exoneration. We agree.

¶ 27                                          A. Standard of Review

¶ 28    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). In this case, the trial court's grant of summary judgment was based upon its interpretation of the insurance policy. We review both the court's ruling on summary judgment and its interpretation of an insurance policy *de novo*. *Standard Mutual Insurance Co.*

*v. Lay*, 2013 IL 114617, ¶ 15, 989 N.E.2d 591; *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371, 875 N.E.2d 1082, 1089 (2007). The supreme court has explained the general rules governing the interpretation of insurance policies, as follows:

> "In construing an insurance policy, we must ascertain and give effect to the intentions of the parties, as expressed in the policy language. [Citation.] The policy must be construed as a whole, giving effect to every provision. [Citation.] Unambiguous words in the policy are to be given their plain, ordinary, and popular meaning. [Citation.] Where the policy language is ambiguous, courts are to construe the policy liberally in favor of coverage. [Citation.]" *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184-85, 939 N.E.2d 288, 293 (2010).

¶ 29                                B. The Policy at Issue

¶ 30    Our analysis begins with the language of the policy describing when coverage applies (again, as in the original policy document, we italicize terms that are specifically defined in the policy): "Coverage Part I applies only if the *bodily injury*, *personal injury*[,] or *property damage* is the result of an *occurrence* during the *policy period* and in the *coverage territory*." Next, the policy defines "occurrence" as follows: "With respect to *personal injury*, only the offenses defined under *personal injury*. For any claim for *personal injury*, the date of the *occurrence* is the date that the first offense took place or is alleged to have taken place." As relevant to this appeal, the policy defines "personal injury" as "injury *** caused by *** [the] offense[ of] *** malicious prosecution."

¶ 31    We note that plaintiffs and defendant disagree over the meaning of "first offense" as used in the definition of "occurrence." Plaintiffs contend that "first offense" must be interpreted on a claim-by-claim basis (*i.e.*, the date the malicious prosecution occurred was the date that the first *malicious prosecution* alleged in Beaman's complaint occurred). Defendant, on the other hand, suggests that "first offense" should be interpreted on a case-by-case basis (*i.e.*, the date the malicious prosecution occurred was the date that the first *personal-injury claim of any kind* alleged in Beaman's complaint occurred). We need not resolve this particular issue, however, because we conclude that none of the claims in Beaman's complaint–including his malicious-prosecution claim–occurred during the March 2008 to March 2009 policy period.

¶ 32    "[T]o state a claim for malicious prosecution, a plaintiff [(in this case, Beaman)] must allege facts showing: (1) the defendant [(in this case, plaintiffs)] commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." (Emphasis omitted.) *Hurlbert v. Charles*, 238 Ill. 2d 248, 255, 938 N.E.2d 507, 512 (2010). Plaintiffs argue that because Beaman's malicious-prosecution claim was not fully ripe for adjudication until the criminal proceedings against him were terminated, the malicious prosecution "took place" when the State dismissed the charges against Beaman. This interpretation is contrary to the plain language of the policy.

¶ 33    Plaintiffs ignore the policy's special definition of "personal injury." Specifically, plaintiffs erroneously equate the "personal injury" of "malicious prosecution" (as the *policy* uses those terms) with the common-law elements of the tort of malicious prosecution. However, the two are not the same. Plaintiffs' interpretation of "personal injury" fails to construe the terms of the policy as a whole. *Yorkville National Bank*, 238 Ill. 2d at 184, 939 N.E.2d at 293. Construing the terms as a whole, the policy clearly defines "personal injury" as "*injury *** caused by ***

malicious prosecution." (Emphasis added.) Accordingly, to conclude that the "occurrence" resulting in Beaman's "personal injury" happened within the policy period, the *injury caused by* the malicious prosecution must have taken place within the policy period. In other words, the event that triggers coverage is the actual *injury* suffered by the prosecuted party, not the accrual of the *tort* of malicious prosecution.

¶ 34    In this case, Beaman's injury obviously did not occur during the March 2008 to March 2009 policy period. We must give the term "injury"–which the policy uses to define the term "personal injury"–its plain, ordinary, and popular meaning. *Id*. To say that Beaman suffered his "injury" when he was exonerated would be to ignore the plain and ordinary meaning of the term "injury." As the Second District recently stated in a case strikingly similar to this one,

" 'it is difficult to see how [a criminal defendant's] release from prison can be described as an "injury" in any sense of the word.' " *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312, ¶ 23, 18 N.E.3d 193 (quoting *Gulf Underwriters Insurance Co. v. City of Council Bluffs*, 755 F. Supp. 2d 988, 1008 (S.D. Iowa 2010)).

¶ 35    We note that after briefing in this appeal was completed, the Second District decided *Indian Harbor Insurance Co. v. City of Waukegan*, 2015 IL App (2d) 140293, a declaratory judgment action involving a malicious-prosecution claim and an insurance policy similar to the policy at issue in this case. In *City of Waukegan*, the insured parties argued (just as plaintiffs in this case have argued) that coverage under the policy was triggered at the time the criminal proceedings were terminated because "that is the final element for the accrual of the tort" of malicious prosecution. *Id*. ¶ 14. The Second District rejected that argument, holding that "the initiation of the allegedly malicious prosecution is the triggering event for coverage of a malicious-prosecution claim." *Id*. ¶ 30. In so holding, the court noted the following:

"[The insured] argues that we should read into the policies the language that 'personal injury' means 'injury arising out of' malicious prosecution. The problem with this argument is that [the insurer's] policies focus not on the tort of malicious prosecution, but on wrongful acts 'which result in' personal injury, as the triggering event. *** Furthermore, [the insured's] interpretation ignores that the wrongful act must occur within the policy period. Simply put, the policies do not equate a wrongful act with a completed cause of action." *Id*. ¶ 31.

¶ 36    The *City of Waukegan* court relied heavily upon its earlier decision in *City of Zion*, 2014 IL App (2d) 131312, 18 N.E.3d 193, which involved an insurance policy that defined "personal injury" the same as the policy at issue in this case. The *City of Zion* court set forth the relevant provisions of the policy at issue in that case, as follows:

"The law enforcement liability section provides, in pertinent part, that [the insurer] will 'pay amounts any protected person is legally required to pay as damages for covered injury or damage' that (1) 'results from law enforcement activities or operations by or for you,' (2) 'happens while this agreement is in effect,' and (3) 'is caused by a wrongful act that is committed while conducting law enforcement activities or operations.' The policy defines '[i]njury or damage' as 'bodily injury, personal injury, or property damage.' *It defines* '[p]ersonal injury,' *in pertinent part*, *as* 'injury *** caused by *** [m]alicious prosecution.' " (Emphasis added.) *Id*. ¶ 12.

¶ 37    The *City of Zion* court rejected the insured parties' argument that coverage was triggered once all the elements of a malicious-prosecution claim were in place. *Id*. ¶ 14. In an analysis

that fully applies to the policy at issue in this case, the court explained its interpretation of the policy language as follows:

> "[The insured parties] misconstrue the plain language of the policy. Unlike the general liability section, the law enforcement liability section does not require that the 'offense' of malicious prosecution be 'committed' while the policy is in effect. Instead, the law enforcement liability section provides coverage if the 'injury' caused by malicious prosecution 'happens' while the policy is in effect. Accordingly, in order to determine whether a malicious-prosecution claim triggers coverage under the law enforcement liability section, we need to determine when the 'injury' resulting from malicious prosecution 'happens,' not when the 'offense' is 'committed.' " *Id.*

The Second District concluded that the malicious-prosecution *injury* happened when the plaintiff was arrested and prosecuted–not when he was exonerated–"because the favorable termination of a malicious prosecution marks the 'beginning of the judicial system's remediation' of the wrong committed, not the commencement of the injury or damage." *Id.* ¶ 23 (quoting *Newfane v. General Star National Insurance Co.*, 784 N.Y.S.2d 787, 792 (N.Y. App. Div. 2004)). Likewise, in this case, we conclude that Beaman's personal injury–that is, the "injury *** caused by *** malicious prosecution"–"took place" when Beaman was arrested and prosecuted.

¶ 38 In reaching its holding, the *City of Zion* court noted that the tort of malicious prosecution is *sui generis. Id.* ¶ 22. Citing the New Jersey Superior Court case of *Muller Fuel Oil Co. v. Insurance Co. of North America*, 232 A.2d 168, 175 (N.J. Super. Ct. App. Div. 1967), the *City of Zion* court explained the unique nature of malicious-prosecution claims for purposes of determining insurance coverage:

> "[I]n the negligence context, the sustaining of damages is the final element that marks accrual of the cause of action; thus, the occurrence triggering insurance coverage is simultaneous with the accrual of the cause of action. [Citation.] In the malicious-prosecution context, by contrast, the sustaining of damages is not the final element. [Citation.] Rather, the cause of action accrues when the criminal proceeding has been favorably terminated. [Citation.] According to the [*Muller*] court, this explains why the occurrence triggering insurance coverage of a malicious-prosecution claim may precede the accrual of the cause of action. [Citation.]" *City of Zion*, 2014 IL App (2d) 131312, ¶ 22, 18 N.E.3d 193.

¶ 39 The Second District's decisions in *City of Zion* and *City of Waukegan* are well-reasoned and applicable to the policy provisions at issue in this case. Because we conclude that Beaman's alleged personal injury occurred outside the March 2008 to March 2009 policy period, the trial court erred by granting summary judgment for plaintiffs.

¶ 40                                             III. CONCLUSION

¶ 41 For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 42       Reversed and remanded.