# Illinois Official Reports

## Appellate Court

---

***St. Paul Fire & Marine Insurance Co. v. City of Waukegan*, 2017 IL App (2d) 160381**

---

| | |
|---|---|
| Appellate Court Caption | ST. PAUL FIRE AND MARINE INSURANCE COMPANY and TRAVELERS INDEMNITY COMPANY, Plaintiffs-Appellees, v. THE CITY OF WAUKEGAN; LUCIAN TESSMANN; DONALD MEADIE; FERNANDO SHIPLEY; RICHARD DAVIS; TERRY HOUSE; ROBERT REPP; BURTON SETTERLUND; and PHILLIP STEVENSON and MARIA LaCOUR, as Representatives of Dennis Cobb and Howard Pratt, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-16-0381 |
| Filed | August 1, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-MR-289; the Hon. Thomas M. Schippers, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paulette A. Petretti and Darcee C. Williams, of Scarino, Himes & Petrarca, Chtrd., of Chicago, for appellants.<br><br>Dennis M. Dolan and Lindsay C. Donald, of Litchfield Cavo LLP, of Chicago, for appellees. |

| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendants, the City of Waukegan and former Waukegan police officers Lucian Tessmann, Donald Meadie, Fernando Shipley, Richard Davis, Terry House, Robert Repp, Burton Setterlund, and Phillip Stevenson and Maria LaCour (as representatives of deceased Waukegan police officers Dennis Cobb and Howard Pratt) (collectively, the City), appeal from the trial court's order granting summary judgment in favor of plaintiffs, St. Paul Fire and Marine Insurance Company and Travelers Indemnity Company (collectively, the insurers) and denying the City's motion for judgment on the pleadings. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The record reflects that Juan Rivera, the plaintiff in the underlying wrongful conviction case, was arrested and charged with the rape and murder of 11-year-old Holly Staker in 1992. Rivera's arrest came after he confessed following four days of intense questioning. Rivera's confession was introduced into evidence by the State at his 1993 trial, after which he was found guilty and sentenced to natural life in prison. In November 1996, this court reversed Rivera's conviction due to numerous trial errors but upheld the trial court's order denying Rivera's motion to suppress that alleged that his confession was coerced. *People v. Rivera*, No. 2-94-0075 (1996) (unpublished order under Supreme Court Rule 23).

¶ 4    Rivera was retried in 1998. The State once again introduced the confession through the testimony of Waukegan police officers. Rivera was again convicted and sentenced to natural life in prison. On appeal, this court affirmed the conviction. *People v. Rivera*, 333 Ill. App. 3d 1092 (2001). Following Rivera's second conviction, DNA testing excluded Rivera as the source of the semen found in the victim. Rivera then filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)). The trial court granted the petition and ordered a new trial.

¶ 5    The State elected to try Rivera for a third time, and the trial commenced in May 2009. Rivera's confession was again presented through the testimony of Waukegan police officers. Again, Rivera was convicted and sentenced to natural life imprisonment. This court reversed Rivera's conviction. *People v. Rivera*, 2011 IL App (2d) 091060. On January 6, 2012, Rivera was released from prison. On October 30, 2012, Rivera filed a federal wrongful conviction complaint against numerous defendants, including the City of Waukegan and the police officers named in this coverage suit.

¶ 6    Rivera's lawsuit alleged various civil rights violations and common-law tort claims relating to his arrest, conviction, and 20-year imprisonment. Rivera v. Lake County, Illinois, No. 12-CV-8665 (Cir. Ct. Lake Co.). His third amended complaint contained 13 counts and sought compensatory and punitive damages as well as attorney fees and costs against the City. In the first six counts of the complaint, Rivera alleged violations of section 1983 of the United

States Code (42 U.S.C. § 1983 (2012)): (1) the confession was both coerced and false, which resulted in a violation of his fifth amendment rights (Rivera alleged that the confession was the only reason that he was prosecuted and convicted); (2) the confession was both coerced and false, which resulted in a violation of his fourteenth amendment rights; (3) federal malicious prosecution[1]; (4) due process violations based upon an allegation that police officers withheld exculpatory evidence from the prosecution; (5) conspiracy to deprive him of his constitutional rights; and (6) failure to intervene.

¶ 7        The next six counts in the complaint were based upon state law: (7) malicious prosecution (defendants "accused Plaintiff of criminal activity and exerted influence to initiate and continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent"); (8) intentional infliction of emotional distress; (9) civil conspiracy; (10) defamation; (11) *respondeat superior*; and (12) indemnification. Finally, count XIII was also brought pursuant to section 1983 (42 U.S.C. § 1983 (2012)), and in it Rivera alleged a conspiracy to deny access to the courts.

¶ 8        The record reflects that the insurers provided the City with a series of one-year primary and umbrella law enforcement liability policies covering the period from November 1, 2006, through November 1, 2010. Travelers provided the City with similar primary and umbrella coverage for the period from November 1, 2010, through November 1, 2011. The City tendered the Rivera complaint to the insureds for defense and indemnification. On February 24, 2015, the insurers filed this action and sought a declaratory judgment pursuant to section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2014)). The insurers alleged that they had no duty to defend or indemnify any of the defendants in the Rivera wrongful conviction lawsuit. While this coverage suit was pending, the Rivera lawsuit settled for $20 million. See *In re Marriage of Rivera*, 2016 IL App (1st) 160552, ¶ 4. According to a letter from counsel for the City to counsel from Travelers, the City agreed to pay its share ($7.5 million) to Rivera in exchange for the dismissal with prejudice of all claims.

¶ 9        The insurers' complaint for declaratory judgment alleged that the policies issued to the City did not provide coverage because the policies' coverage was triggered only by injury or damage that happened while the policies were in effect. They argued that Rivera's injuries, as alleged in his complaint, occurred in 1992 when he was coerced into providing a false confession and in 1993 when he was tried and convicted.

¶ 10        In its pleadings, the City alleged that the 2008-09 law enforcement liability policies were triggered by "wrongful acts" that occurred during Rivera's third trial, specifically, the use of Rivera's coerced confession in violation of the fifth amendment and suppression of exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

¶ 11        The parties agree that the policies at issue are the November 1, 2008, to November 1, 2009, primary and umbrella law enforcement liability (LEL) policies, which were in effect during Rivera's third trial.

¶ 12        The relevant policy terms are stated in the "Law Enforcement Liability Protection" section of the 2008-09 primary policy, as modified by a "Law Enforcement Liability Self-Insured Retention Endorsement." The section provides, in pertinent part:

_____

[1] However, Rivera admitted in this count that the Seventh Circuit had held that malicious prosecution was not actionable under section 1983.

"Law Enforcement Liability. We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:

* results from law enforcement activities or operations by or for you;

* happens while this agreement is in effect; and

* is caused by a wrongful act that is committed while conducting law enforcement activities or operations.

\* \* \*

*Injury or damage* means bodily injury, personal injury, or property damage.

\* \* \*

*Personal injury* means injury, other than bodily injury, caused by any of the following wrongful acts:

* False arrest, detention, or imprisonment.

* Malicious prosecution.

\* \* \*

* Violation of civil rights protected under any federal, state, or local law.

\* \* \*

*Wrongful act* means any act, error, or omission."

¶ 13 The provisions governing the LEL coverage in the 2008-09 umbrella policy are nearly identical to those in the primary policy. The "What This Agreement Covers" section of the umbrella policy provides as follows:

"Law enforcement liability. We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:

* results from law enforcement activities or operations by or for you;

* happens while this agreement is in effect;

* is caused by a wrongful act that is committed while conducting law enforcement activities or operations; and

* is covered by your Law Enforcement Liability Basis Insurance."

¶ 14 The LEL policies define law enforcement activities or operations as any of the official activities or operations of the police department, sheriff's agency, or other public safety organization that enforces the law and protects persons or property. The policies define a wrongful act as any act, error, or omission.

¶ 15 On October 14, 2015, the trial court directed the parties to submit "cross-motions for judgment on the pleadings and/or summary judgment on the issue of triggers." On the City's motion, the trial court took judicial notice of this court's decision in *Rivera*, 2011 IL App (2d) 091060, to establish that Rivera's third trial occurred in 2009 and that his confession was again introduced at that trial.[2] The remainder of the case, including discovery, was stayed pending the court's ruling on the "trigger" issue. The insurers filed a motion for summary judgment, and the City filed a motion for judgment on the pleadings. Both parties filed memoranda in support of their positions, along with responses to their opponent's filings.

---

[2]Rivera's second and third trials were not mentioned in his third amended complaint.

¶ 16    On April 22, 2016, the trial court issued a lengthy "Memorandum Order" finding that the Rivera lawsuit did not trigger coverage under the insurers' 2008-09 policies, which were in effect during Rivera's third trial. In doing so, the trial court followed this court's decision in *Indian Harbor Insurance Co. v. City of Waukegan*, 2015 IL App (2d) 140293, in which this court rejected the argument that there were additional triggers of coverage beyond Rivera's malicious prosecution. Therefore, the trial court granted the insurers' motion for summary judgment and denied the City's motion for judgment on the pleadings. The City appealed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, the City argues that, because Rivera's first and second convictions had been reversed, "the slate had been wiped clean." Therefore, the use of Rivera's coerced confession against him, as well as the *Brady* violation, failure to intervene, and conspiracy, caused injury to Rivera during his third trial in May 2009. It also argues that the trial court's analysis was flawed because it improperly used a "malicious prosecution" analysis to assess Rivera's "discrete" claims of constitutional violations. The City acknowledges our holdings in *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312, and *Indian Harbor*, where we rejected multiple-trigger theories for coverage in malicious-prosecution cases. Specifically, in *Indian Harbor*, we stated:

>      "We find that *all of the acts or omissions* alleged to have occurred after the date Rivera was charged are really continuations of the same alleged harm. The purported ongoing *acts* of conspiracy that prolonged Rivera's incarceration were not new harmful acts. Instead, they were the continuing effects of Rivera's arrest and ultimately his convictions of rape and murder." (Emphases added.) *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 40.

¶ 19    The City argues that the claim for malicious prosecution is not the issue in this appeal. Instead, it contends that we should adopt the analysis of the federal district court in *Westport Insurance Corp. v. City of Waukegan*, 75 F. Supp. 3d 821 (N.D. Ill. 2014) (*Westport I*), and *Westport Insurance Corp. v. City of Waukegan*, 157 F. Supp. 3d 769 (N.D. Ill. 2016) (*Westport II*).

¶ 20    *Westport I* and *II* pertained to the issuance of LEL policies by Westport Insurance Corporation (Westport) to the City. In *Westport I*, Judge Darrah ruled that, although Rivera did not specifically allege claims applicable to his 1998 trial and conviction, "several of his claims potentially apply to that trial." *Westport I*, 75 F. Supp. 3d at 827. Judge Darrah stated:

>      "A violation of the *** Fifth Amendment occurs when a false confession is used in a criminal case. [Citation.] Thus, Rivera suffered an injury when his confession was used against him in the 1998 trial, which occurred within the coverage period." *Id.* (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)).

¶ 21    Judge Darrah stated that, because Rivera's underlying complaint alleged claims that "plausibly" came within Westport's coverage, Westport owed a duty to defend. Judge Darrah ruled that the issue of indemnity was not ripe for consideration. In *Westport II*, Judge Alonso denied Westport's motion to reconsider Judge Darrah's "trigger" ruling. By the time Judge Alonso issued his ruling, the parties in the underlying suit reached a settlement agreement. In its motion to reconsider Judge Darrah's ruling, Westport relied on our opinion in *Indian Harbor*. Judge Alonso stated, "It is at best uncertain whether the Illinois Supreme Court would conclude that a Fifth Amendment self-incrimination claim should be treated like a malicious

- 5 -

prosecution claim, in the sense that it should trigger coverage only in the early stages of a criminal case." *Westport II*, 157 F. Supp. 3d at 777.

¶ 22    The insurers argue that the trial court properly followed this court's opinion in *Indian Harbor*, which held that Rivera's lawsuit "presented a single cause and therefore a single occurrence." *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 44. The insurers recognize that we are not necessarily required to follow our previous decisions, but they assert that, under considerations of *stare decisis*, we should not depart from *Indian Harbor*'s holding absent good cause or compelling reasons.

¶ 23    Our focus on appeal is whether the trial court erred when it granted summary judgment in the insurers' favor and denied the City's motion for judgment on the pleadings, finding that Rivera's lawsuit did not trigger coverage under the 2008-09 policies.

¶ 24    Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adames v. Sheahan*, 233 Ill. 2d 276, 295 (2009). A trial court's grant of a motion for summary judgment is subject to *de novo* review on appeal. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). The construction of an insurance policy is a question of law, which is also subject to *de novo* review. *Id.* "Interpretation of the language in an insurance policy is especially appropriate for summary judgment because, in such cases, the court is presented only with a question of law." *United States Fidelity & Guaranty Co. v. Alliance Syndicate, Inc.*, 286 Ill. App. 3d 417, 418 (1997). We may sustain the trial court's order granting summary judgment on any ground supported by the record, regardless of whether the trial court relied on that ground and regardless of whether the trial court's reasoning was correct. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007).

¶ 25    Judgment on the pleadings is proper only when the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). When ruling on a motion for judgment on the pleadings, the court considers only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Id.* We review *de novo* the court's order granting or denying a motion for judgment on the pleadings. *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 12.

¶ 26    Our primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Gillen*, 215 Ill. 2d at 393. The construction we give to an insurance policy should be a natural and reasonable one. *Id.* (citing *De los Reyes v. Travelers Insurance Co.*, 135 Ill. 2d 353, 358 (1990)). Undefined terms will be given their plain, ordinary, and popular meanings. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 115 (1992). If language in a policy is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001). We will not strain to find an ambiguity in a policy where none exists. *Id.*

¶ 27    Courts construe an insurance policy as a whole, with due regard to the risks undertaken, the subject matter that is insured, and the purpose of the entire policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 456 (2010) (citing *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997)). Our supreme court "has long established that the burden is on the insured

to prove that its claim falls within the coverage of an insurance policy." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). In order to determine whether an underlying lawsuit triggers insurance coverage, "the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy." *Outboard Marine*, 154 Ill. 2d at 107-08.

¶ 28    The City acknowledges our holding in *Indian Harbor*. In *Indian Harbor*, we relied upon our earlier decision in *City of Zion*, where we construed LEL policy language that was identical to the policy language identified here. The City argues that "blanket application of the analysis" in *Indian Harbor* should not be imposed here because the policy period at issue there was after Rivera's exoneration, whereas here the policies at issue were in effect during Rivera's third trial. The City argues that, because *Indian Harbor* did not specifically identify the trigger for Rivera's fifth-amendment claim, we should follow the federal district court's decisions in *Westport I* and *II*.

¶ 29    Because the City asks that we follow the reasoning in *Westport I* and *II* instead of our holding in *Indian Harbor*, we must discuss the doctrine of *stare decisis* and our rules of precedent. The doctrine of *stare decisis* is the means by which courts ensure that the law will not merely change erratically but will develop in a principled, intelligent fashion. *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). " 'It is the absolute duty of the circuit court to follow the decisions of the appellate court.' " *In re R.C.*, 195 Ill. 2d 291, 297 (2001) (quoting *In re A.A.*, 181 Ill. 2d 32, 36 (1988)). Decisions of the United States district and circuit courts are not binding upon Illinois courts. *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977). Also, the decision of one district, division, or panel of the Illinois Appellate Court is not binding on other districts, divisions, or panels. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

¶ 30    Though we are not bound by the earlier decisions of this court, absent compelling reasons for doing so, we are reluctant to abandon or modify an earlier decision soon after its publication. This is particularly the case where there is a substantial body of authority established by courts of other jurisdictions that we look to for guidance. "Where a court of review reexamines an issue already ruled upon and arrives at an inapposite decision, the straight path of *stare decisis* is affected, as well as reliance interests of litigants, the bench, and the bar." *Id.* "[W]hen a rule of law has been settled, it should be followed unless a party can show that serious detriment prejudicial to the public interest is likely to arise. The rule of *stare decisis* is founded upon sound principles in the administration of justice, and a court should not depart from rules long recognized as the law merely because the court believes that it might decide the issue differently if the question were novel." *Appelhans v. McFall*, 325 Ill. App. 3d 232, 238 (2001) (citing *Maki v. Frelk*, 40 Ill. 2d 193, 196 (1968)). We should approach reconsideration of our decisions with the utmost caution. Such caution " 'promotes the evenhanded, predictable and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual or perceived integrity of the judicial process.' " *State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)).

¶ 31    The City argues that we should look to *National Casualty Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010), the first appellate decision to address coverage for wrongful convictions in Illinois. The City notes that the *McFatridge* court did not rule out the possibility of "occurrences" (triggers) between charging and exoneration. The City forgets that this court

rejected *McFatridge*'s analysis in *City of Zion* and *Indian Harbor*. In *McFatridge*, the Seventh Circuit relied on an Illinois Appellate Court case that had been reversed—*Security Mutual Casualty Co. v. Harbor Insurance Co.*, 65 Ill. App. 3d 198 (1978), *rev'd*, 77 Ill. 2d 446 (1979). In *City of Zion*, we noted that the only Illinois case to address the issue of which occurrence triggers coverage of a malicious-prosecution claim was *Security Mutual*. In *Security Mutual*, the appellate court held that coverage in a malicious-prosecution case was not triggered until the prosecution was favorably terminated. *Security Mutual*, 65 Ill. App. 3d at 206. The Illinois Supreme Court reversed because the appellate court exceeded the scope of its review by *sua sponte* addressing the trigger issue. *Security Mutual*, 77 Ill. 2d at 451. The supreme court determined that the coverage dispute was subject to arbitration regardless of whether the insured's claim was valid. *Id.* In *City of Zion*, we rejected the appellate court's reasoning in *Security Mutual*, not only because our supreme court reversed the decision but also because the appellate court "looked solely to the elements of a cause of action" and provided "no guidance for interpreting [the policy] language." *City of Zion*, 2014 IL App (2d) 131312, ¶ 18. In *City of Zion*, we followed the reasoning of the majority of jurisdictions, which had held that "the commencement of a malicious prosecution is the event that triggers insurance coverage." *Id.* ¶ 19. We noted that only six cases had adopted the minority position that the favorable termination of a malicious prosecution triggers insurance coverage. Three of the cases were from the Seventh Circuit: *McFatridge*, 604 F.3d 335 (7th Cir. 2010); *America Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475 (7th Cir. 2012); and *Northfield Insurance Co. v. City of Waukegan*, 701 F.3d 1124 (7th Cir. 2012). We said that none of those cases were "particularly persuasive given their reliance on *Security Mutual*." *City of Zion*, 2014 IL App (2d) 131312, ¶ 31.

¶ 32    We repeated our criticism of *Security Mutual* in *Indian Harbor*. *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 16. There, we cited *City of Zion* and continued to follow the majority view. In construing the policy language, which was similar to the language at issue in *City of Zion*, we held that coverage for malicious prosecution was not triggered during the policy period. *Id.* ¶ 36. The LEL policies in *Indian Harbor* were issued for the years November 1, 2011, to November 1, 2013, covering the period when Rivera was exonerated. We also examined whether any of Rivera's other allegations triggered coverage, including the *Brady* claim. In *Indian Harbor*, Rivera argued that the *Brady* violations were independent triggering events because the duty to disclose exculpatory evidence existed "before, during, and after trial." *Id.* ¶ 39. We rejected this argument, citing our supreme court's decision in *Nicor, Inc. v. Associated Electronics & Gas Insurance Services, Ltd.*, 223 Ill. 2d 407 (2006). Specifically, we said:

> "Applying the cause theory as set forth in *Nicor* to the present case clearly establishes that this case presented a single cause and therefore a single occurrence. The alleged *Brady* violations that contributed to Rivera's arrest and convictions might have had an ongoing effect over a period of time, but Rivera's injury resulted from the 'same conditions and was inflicted as part of an unbroken and uninterrupted continuum.' " *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 44 (quoting *Nicor*, 223 Ill. 2d at 419).

¶ 33    This statement in *Indian Harbor* was not *dicta*. Under our rules of precedent, the trial court was required to follow *Indian Harbor* and reject the City's argument that the *Brady* violation and the use of Rivera's confession at his third trial are independent triggering events.

- 8 -

¶ 34    The City's challenge here is to convince us to depart from our opinion in *Indian Harbor*. Since *Indian Harbor*, the Fourth District has adopted our analysis in *Indian Harbor* and *City of Zion*. See *County of McLean v. States Self-Insurance Risk Retention Group*, 2015 IL App (4th) 140628. Although the policy language at issue in *County of McLean* was slightly different from the policies at issue in *Indian Harbor* and *City of Zion*, the Fourth District found that our decisions were well reasoned and applicable to the issues there. *Id.* ¶ 39. In *County of McLean*, the plaintiff in the underlying suit, Alan Beaman, was arrested for a 1993 murder. A jury convicted Beaman in 1995. In May 2008, our supreme court reversed Beaman's conviction due to a *Brady* violation. *People v. Beaman*, 229 Ill. 2d 56 (2008). The State dismissed all charges in 2009. Beaman filed his federal wrongful conviction suit in 2012. In 2013, the county and other defendants in Beaman's wrongful conviction case filed a complaint seeking a declaratory judgment that the insurer was obligated to pay defense costs because the policy was "in place when Beaman was exonerated." *County of McLean*, 2015 IL App (4th) 140628, ¶ 3. The trial court granted summary judgment for the county and the other insureds, ruling that Beaman's "malicious-prosecution claim ripened during the policy period." *Id.* The policy at issue was in effect from March 2008 to March 2009, the period during which Beaman was exonerated; favorable determination is the final element of a malicious-prosecution claim. Each count of Beaman's complaint incorporated by reference his *Brady* allegation. *Id.* ¶ 11. The policy language in *County of McLean* provided that there would be coverage for " '[a]ny act which gives rise to any liability under any federal crime rights statute, any state employment related law, or the Fair Labor Standards Act, if such act is committed during the policy period.' " *Id.* ¶ 17. The policy defined "occurrence" as follows:

> " 'With respect to *personal injury*, only the offenses defined under *personal injury*. For any claim for *personal injury*, the date of the *occurrence* is the date that the first offense took place or is alleged to have taken place.' " (Emphases in original.) *Id.* ¶ 4.

¶ 35    In *County of McLean*, the trial court found that Beaman's personal injury claims were not actionable until the State dismissed the criminal charges and that, because the dismissal occurred during the policy period, the insurer was obligated to pay the costs of defense. *Id.* ¶ 23. The Fourth District rejected this rationale because it was contrary to the plain language of the policy. *Id.* ¶ 32. The court concluded that the "event that triggers coverage is the actual *injury* suffered by the prosecuted party, not the accrual of the *tort* of malicious prosecution." (Emphases in original.) *Id.* ¶ 33.

¶ 36    The City argues that *Indian Harbor*, *City of Zion*, and *County of McLean* are distinguishable because they addressed policies in effect at the time of exoneration, not during a trial. The City argues that, when a conviction is reversed, "the slate has been wiped clean and the conviction is wholly nullified, and a defendant is not placed in double jeopardy at a retrial," quoting *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1025 (2004) (citing *North Carolina v. Pearce*, 395 U.S. 711, 720-21 (1969), *abrogated on other grounds*, *Alabama v. Smith*, 490 U.S. 794 (1989)). Because Rivera was convicted anew in 2009, the City argues, his third conviction cannot be deemed a continuation of his previous conviction. We reject this argument. Rivera's second and third trials were continuations of his wrongful prosecution, which increased his damages but were not new injuries. Under Illinois law, a prosecution is defined as "all legal proceedings by which a person's liability for an offense is determined, commencing with the return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal." 720 ILCS 5/2-16 (West 2016).

¶ 37     The City's argument that each trial at which evidence was withheld constituted a separate triggering event mirrors an argument that was rejected by the Missouri Court of Appeals in *City of Lee's Summit v. Missouri Public Entity Risk Management*, 390 S.W.3d 214 (Mo. Ct. App. 2012). In *City of Lee's Summit*, like Rivera, the plaintiff in the underlying lawsuit was tried three times. The court of appeals rejected the multiple-trigger approach for continuing or repeated injuries that was used in asbestosis and other latent or gradual injury cases, finding it not well suited for deprivation-of-liberty cases where injury is evident from the outset. *Id.* at 221-22. The court commented that courts in other jurisdictions "that have addressed when insurance is triggered for civil rights claims have found that such claims seeking damages for constitutional injuries resulting from arrest, conviction, and incarceration are analogous to claims for malicious prosecution." *Id.* at 220. "The continuing conduct required in conspiring to deprive someone of the right to a fair trial poses a risk of injury similar to that posed by the continuing conduct of malicious prosecution ***." *American States Preferred Insurance Co. v. McKinley*, No. 07-0584CV-W-NKL, 2009 WL 1139122, at *8 (W.D. Mo. Apr. 28, 2009). We agree with the conclusion in *City of Lee's Summit*. Here, as in *City of Lee's Summit*, Rivera's "section 1983 claims for deprivation of his federal constitutional right to a fair trial and for conspiracy to deprive him of his right to a fair trial based on the failure to disclose or preserve exculpatory evidence, were in the nature of malicious prosecution for purposes of insurance coverage." *City of Lee's Summit*, 390 S.W.3d at 220.

¶ 38                              A. The *Brady* Claim

¶ 39     The City argues that the procedural due process *Brady* analysis that we discussed in *Indian Harbor* should not be applied here. Specifically, it cites *Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007), for the proposition that the "deprivation of exculpatory use of [*sic*] evidence for trial is a substantive due process violation that is distinguishable from the procedural due process claim of malicious prosecution." There are several problems with the City's argument. First, *Steidl* was not an insurance coverage case. The issue in *Steidl* was whether the officers were entitled to qualified immunity for their conduct. The Seventh Circuit concluded that "all of the police involved in this case[ ] had ample notice that the knowing suppression of exculpatory material that was in the files at the time of the trial violated the defendant's constitutional rights." *Id.* at 632. The court held that "[b]y the time these officials *acted*, *Kyles v. Whitley*[3] was also on the books, eliminating any doubt about the joint responsibility of the police and prosecutors to assure the fair administration of the criminal justice system." (Emphasis added.) *Id.* at 632-33. The court held that the district court correctly denied the officers' motion for dismissal on qualified immunity. To state the obvious, the court's discussion concerned the officers' actions at the time they withheld exculpatory evidence. The City's argument ignores the language of the policies. St. Paul's 2008-09 policies provided that it would pay any amount that any protected person was legally required to pay as damages for a covered injury or damage that (1) resulted from law enforcement activities, (2) happened while the agreement was in effect, and (3) was caused by a wrongful act that was committed while conducting law enforcement activities or operations. According to Rivera's complaint, the police recovered a knife in 1994 near the back door of the building where Staker was murdered. The police believed that the knife was the murder weapon. Rivera claimed that the

---

[3] 514 U.S. 419 (1995).

police also wrote a detailed report yet concealed this evidence and later destroyed the weapon, "insuring that Plaintiff would never be able to use it in his criminal defense." Rivera claimed that the police "never" provided the information to his attorneys or the prosecutors. Clearly, under the language of the policies, those "law enforcement activities" took place in 1994 or shortly thereafter, well before the effective dates of the policies.

¶ 40 The City's argument suffers from the same infirmity as *McFatridge*. It focuses on the elements of, or accrual of, a cause of action for a section 1983 *Brady* violation, as opposed to the policy language. See *City of Zion*, 2014 IL App (2d) 131312, ¶ 18. To prevail on a section 1983 *Brady* claim against a police officer, a plaintiff must prove that (1) the evidence was favorable to him, (2) the officer knowingly or intentionally concealed the evidence, and (3) the concealed evidence resulted in prejudice. *Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016). "A police officer's failure to disclose exculpatory evidence to a prosecutor may foreseeably result in a violation of the accused's due process rights under *Brady*." *Id.* (citing *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001), *abrogated on other grounds*, *Manuel v. City of Joliet*, ___ U.S. ___, 137 S. Ct. 911 (2017)). Of course, there is no *Brady* violation until the exculpatory evidence is withheld from a defendant at a trial that results in a conviction. However, whether civil liability attaches focuses on the officers' actions and knowledge at the time they withheld or destroyed the favorable evidence.[4] While the elements of Rivera's *Brady* claim did not ripen until the exculpatory material was withheld and accrue until he was acquitted, the law enforcement activity that caused his injury occurred well before the effective dates of the policies.

¶ 41 In its reply brief, the City argues that "Rivera's malicious prosecution claims, as well as his claims of other discrete torts, including but not limited to Fifth Amendment violations and *Brady* violations, should be deemed separate covered occurrences under St. Paul/Travelers' policies." As support for this claim, it cites *Travelers Indemnity Co. v. Forrest County*, No. 2:14-CV-22-KS-MTP, 2016 WL 3512233 (S.D. Miss. June 22, 2016). *Travelers Indemnity Co.* is a case from a federal district court in Mississippi construing Mississippi law and has no precedential value.

¶ 42 In *Travelers Indemnity Co.*, the district court stated, "[t]he policy here plainly provides coverage for injuries sustained during the policy period, and the *Bivens* Plaintiffs plainly alleged that Bivens and Dixon were in prison for a crime they did not commit during the policy period. Therefore, the *Bivens* Plaintiffs alleged an injury during the policy period." *Travelers Indemnity Co. v. Forest County*, 206 F. Supp. 3d 1216, 1224-25 (S.D. Miss. June 29, 2016). We agree with the insurers that this holding is at odds with Illinois law and is therefore not instructive or relevant. Mere incarceration is not a triggering event under Illinois law. *City of Zion*, 2014 IL App (2d) 131312, ¶¶ 25-26. We also note that the district court held that the Forrest County insureds' alleged failure to come forward with exonerating evidence during parole proceedings during the policy period was an "omission and/or breach of duty" under a Mississippi statute. *Travelers Indemnity Co.*, 2016 WL 3512233, at *3 (S.D. Miss. June 22, 2016). The underlying plaintiffs alleged that the insureds' failure to come forward resulted in

---

[4]Civil liability for a *Brady* violation may attach only to a police officer's conduct because prosecutors have an absolute immunity from such claims. See *Imbler v. Pachtman*, 424 U.S. 409, 427-31 (1976); *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43 (2009) (absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence).

the denial of their requests for early release. *Travelers Indemnity Co.*, 206 F. Supp. 3d at 1223-24. Under the Mississippi statute, "[i]t shall be the duty of any judge, district attorney, county attorney, police officer, or other public official of the state, having information with reference to any person eligible for parole, to send such information as may be in his possession or under his control to the board, in writing, upon request of any member or employee thereof." Miss. Code Ann. § 47-7-19 (2006). We do not find *Travelers Indemnity Co.* helpful to our analysis.

¶ 43                                          B. The Fifth Amendment Claim

¶ 44        Next, the City contends that the use of Rivera's confession at his 2009 trial triggered coverage for his fifth-amendment claim. The fifth amendment commands in pertinent part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. However, courts "measure confessions against the requirements of due process and to exclude involuntary confessions." *People v. Richardson*, 234 Ill. 2d 233, 252 (2009). The court examines the "totality of the circumstances" at the time of the confession to determine "whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome *at the time* he or she confessed." (Emphasis added.) *People v. Gilliam*, 172 Ill. 2d 484, 500 (1996). The City relies on the district court decisions in *Westport I* and *II*, where the court ruled that, for purposes of the duty to defend, the use of Rivera's confession at his second trial in 1998 triggered coverage. In *Westport I* the court said, "[a] violation of the Self-Incrimination Clause of the Fifth Amendment occurs when a false confession is used in a criminal case. See *Chavez v. Martinez*, 538 U.S. 760, 767 *** (2003). Thus, Rivera suffered an injury when his confession was used against him in the 1998 trial, which occurred within the coverage period." *Westport I*, 75 F. Supp. 3d at 827. In *Westport II*, the court denied Westport's motion to reconsider in light of *Indian Harbor*. Instead of following our holding that Rivera's complaint "presented a single cause and therefore a single occurrence" (*Indian Harbor*, 2015 IL App (2d) 140293, ¶ 44), the court denied the motion to reconsider, stating that "[i]t is at best uncertain whether the Illinois Supreme Court would conclude that a Fifth Amendment self-incrimination claim should be treated like a malicious prosecution claim, in the sense that it should trigger coverage only in the early stages of a criminal case" (*Westport II*, 157 F. Supp. 3d at 777). Respectfully, by the time the court ruled on Westport's motion to reconsider, the law in Illinois was clear. *City of Zion*, *Indian Harbor*, and *County of McLean* had all rejected the multiple-trigger theory in wrongful conviction cases. As the Seventh Circuit observed in *Northfield Insurance Co.*, 701 F.3d at 1132, "[a]s a federal court interpreting Illinois law, we are not entitled to singlehandedly modify the Illinois rule without some new direction from the state." Unless and until our supreme court states otherwise, the holdings in *City of Zion*, *Indian Harbor*, and *County of McLean* express Illinois's law on the coverage trigger issue in this case.

¶ 45        The problem with *Westport I* and *II* and the City's argument is that they focus on the elements or accrual date of a fifth-amendment claim instead of comparing the allegations in Rivera's complaint to the policy language. As noted, our construction of an insurance policy should be natural and reasonable. *Gillen*, 215 Ill. 2d at 393. Because a police officer's testimony itself is not actionable, it would be completely unreasonable to hold that insurance coverage for a fifth-amendment violation is triggered when a police officer testifies in a criminal case that a defendant had confessed.

- 12 -

¶ 46    When a police officer testifies in a criminal case that a defendant confessed to him or her, there can be no liability for that conduct because the officer is shielded by absolute witness immunity. *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983). Moreover, when a police officer testifies, he is treated like any other witness; he is not performing a traditional law enforcement activity. *Id.* at 336. Once evidence is turned over to a prosecutor, it is up to the prosecutor to decide what evidence will be presented, a decision over which the insured police officers have no control. See *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 45 (1997). Of course, witness immunity and prosecutorial immunity cannot shield a police officer for misconduct in procuring an involuntary confession. See *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). Once police have engaged in wrongful acts or omissions that later ripen into section 1983 constitutional torts, they cannot escape liability by pointing to decisions of prosecutors or other officials "whom they have defrauded." *Id.* The "causal inquiry is unchanged." *Id.*

¶ 47    According to Rivera's complaint, the misconduct that led to his conviction occurred in 1992, not in 2009 or in 2012 when he was finally exonerated. It would be absurd to hold that the parties intended that the LEL policies were meant to provide coverage for an action in 2009 (testimony), which is shielded by absolute immunity, and then to be used to bootstrap coverage for "law enforcement activity" that took place 17 years earlier. As the United States Supreme Court stated in *Chavez*, police torture or other abuse that results in a confession is actionable under the fourteenth amendment's due process clause whether or not the confession is used at trial. *Chavez*, 538 U.S. at 773.

¶ 48    This case once again informs us that the time of occurrence in insurance law is different from the time of accrual in tort law. In insurance law, the time of occurrence is used to determine when the operative terms of the policy provide coverage. In tort law, the time of accrual is used to determine when the statute of limitations begins to run, a separate consideration that highlights why the overwhelming majority of jurisdictions have rejected variations of the multiple-trigger theory in wrongful conviction coverage cases. We reaffirm our holding in *Indian Harbor* that Rivera's lawsuit presented a "single cause and therefore a single occurrence" (*Indian Harbor*, 2015 IL App (2d) 140293, ¶ 44), which occurred long before the effective dates of the policies in this case.

¶ 49    The City also argues that Rivera's failure-to-intervene and conspiracy claims trigger coverage under the St. Paul 2008-09 policies. These claims are based on Rivera's fifth-amendment and *Brady* claims. We therefore reject the City's argument.

¶ 50    Finally, the City argues that the trial court's holding, which we affirm, renders the promised coverage illusory. "An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." *W.E. Erickson Construction Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 909 (1994). We rejected this same argument in *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 46. As we have discussed, the wrongful acts by the insureds that caused Rivera's injury under both the fifth amendment and *Brady* did not take place during the 2008-09 policy period, and therefore there is no coverage. In other words, had these wrongful acts occurred during the 2008-09 policy period, the insurers' policies would be triggered, subject to any applicable exclusion or exception.

¶ 51                             III. CONCLUSION

¶ 52        For the foregoing reasons, we conclude that Rivera's *Brady* and fifth-amendment claims did not trigger coverage under the insurance policies that the insurers issued to the City. The law enforcement activity on which those claims were based occurred before the policies took effect. Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 53        Affirmed.