2015 IL App (2d) 140293
Nos. 2-14-0293 & 2-14-0315 cons.
Opinion filed March 6, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| INDIAN HARBOR INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-MR-425 |
| | ) | |
| THE CITY OF WAUKEGAN; | ) | |
| LUCIAN TESSMAN; DONALD | ) | |
| MEADIE; FERNANDO SHIPLEY; | ) | |
| HOWARD PRATT; RICHARD DAVIS; | ) | |
| PHILLIP STEVENSON; and JUAN A. | ) | |
| RIVERA, JR., | ) | Honorable |
| | ) | Jorge L. Ortiz, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants, Juan A. Rivera, Jr., the City of Waukegan (City), and former Waukegan police officers Lucian Tessman, Donald Meadie, Fernando Shipley, Howard Pratt, Richard Davis, and Phillip Stevenson, appeal from the order granting the motion of plaintiff, Indian Harbor Insurance Company, for judgment on the pleadings, pursuant to section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2012)).   Defendants raise several issues, but the crux of the case concerns when coverage for a malicious-prosecution claim is triggered under the language of the law enforcement liability insurance policies that plaintiff

issued to the City.   Plaintiff contends that coverage is triggered at the commencement of the alleged malicious prosecution, as that is defined as the "wrongful conduct" under the policies. Defendants contend that coverage is triggered at the termination of the prosecution in favor of the accused.   The trial court agreed with plaintiff and found that, under the plain language of plaintiff's policies, the policies were occurrence-based and coverage was triggered at the commencement of the prosecution.   We affirm, for the following reasons.

¶ 2                                   I. BACKGROUND

¶ 3      Rivera was wrongfully convicted in November 1993 of rape and murder and was imprisoned for 20 years.   After DNA evidence excluded Rivera as the perpetrator, he was exonerated of all wrongdoing.   On December 9, 2011, Rivera's conviction was reversed and he was acquitted.   On January 6, 2012, Rivera was released from prison.   On October 30, 2012, Rivera filed a federal action against numerous defendants, including the City and the six former police officers.   In his first amended complaint, Rivera alleged that the City and the police officers were responsible for denying him a fair trial and for the loss of liberty that resulted from his wrongful conviction.   He alleged a number of claims, including state claims for malicious prosecution and false imprisonment and due-process claims pursuant to 42 U.S.C. § 1983.   The complaint alleged that the police officers repeatedly and continually concealed exculpatory evidence.   Rivera also alleged conspiracy, failure to intervene, intentional infliction of emotional distress, and defamation by Officer Tessman.   The City and the officers claimed that Rivera's lawsuit was covered by the law enforcement liability insurance policies issued by plaintiff for the years November 1, 2011, to November 1, 2013.

¶ 4      In the policies, which contain identical language, plaintiff agreed to pay "on behalf of the insured(s) all damages resulting from a wrongful act(s), which arise out of *** law enforcement

activities. The wrongful act(s) must occur during the policy period and within the policy territory." A "wrongful act" is defined, in part, as a "personal injury," and a "personal injury" is defined, in part, as a "malicious prosecution."

¶ 5 After Rivera initiated the federal action, plaintiff filed this declaratory judgment action against defendants in the circuit court of Lake County. In count I of its complaint, plaintiff stated that the "wrongful acts" alleged in Rivera's lawsuit "occurred entirely or primarily in 1992, and ceased in all respects prior to the [inception date of either policy]." Plaintiff alleged that none of Rivera's claims was covered by its policies, because no "wrongful acts" occurred within the policy periods. Plaintiff filed a motion for judgment on the pleadings, pursuant to section 2-615(e) of the Code.

¶ 6 Defendants argued, *inter alia*, that insurance coverage for malicious prosecution is triggered by the termination of the prosecution in the accused's favor. Defendants noted that Rivera's prosecution continued until his conviction was reversed on December 9, 2011, a date that fell within the first policy period. The City noted that Rivera alleged wrongful acts, "including, but not limited to, malicious prosecution, defamation, conspiracy, intentional infliction of emotional distress and failure to intervene," that fell within the policy periods and triggered coverage. The City contended that plaintiff's duty to defend was triggered because Rivera's suit contained allegations of continuing injury. Additionally, the City argued that granting judgment for plaintiff would be premature because the trial court should determine whether any of Rivera's claims, not just malicious prosecution, trigger plaintiff's duty to defend, and any doubts as to potential coverage must be construed in favor of the insured.

¶ 7 Rivera adopted the City's response to plaintiff's motion and made three additional arguments. Rivera contended that plaintiff's motion was premature because a declaratory

judgment concerning an insurer's duty to indemnify was not ripened until the underlying litigation was completed. Rivera also argued that his federal malicious-prosecution claim under 42 U.S.C. § 1983, which the federal court dismissed, might still be viable, if the remedy provided by state law is inadequate, and that federal malicious-prosecution claims "indisputably accrue when the state dismisses all charges against the plaintiff." Rivera contended that plaintiff could be liable on the federal claim even if the federal court accepts plaintiff's interpretation regarding the accrual of state malicious-prosecution claims. Rivera further argued that the policies covered injury from false imprisonment and that, even if the policies did not cover malicious prosecution, plaintiff might be responsible for covering his false-imprisonment claim.

¶ 8     The trial court granted plaintiff's motion for judgment on the pleadings. Based on its findings, the trial court decided that the remaining counts of plaintiff's declaratory judgment complaint were rendered moot.

¶ 9     Rivera filed a notice of appeal (No. 2-14-0315) and the other defendants filed a separate notice of appeal (No. 2-14-0293). We granted Rivera's motion to consolidate the appeals.

¶ 10                                    II. ANALYSIS

¶ 11                              A. Standard of Review

¶ 12     A motion for judgment on the pleadings is similar to a motion for summary judgment, but it is limited to the pleadings. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 462 (2010). Judgment on the pleadings is properly granted only if the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id*. In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d

381, 385 (2005). To resolve the motion, the court must consider as admitted all well-pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn therefrom. *Wilson*, 237 Ill. 2d at 455. The court, however, must disregard all surplusage and conclusory allegations. *Teeple v. Hunziker*, 118 Ill. App. 3d 492, 497 (1983). Since the trial court rules as a matter of law when deciding a motion for judgment on the pleadings, our review of the judgment is *de novo*. *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, ¶ 14.

¶ 13                          B. Trigger of Coverage for Malicious Prosecution

¶ 14    Defendants argue that the policies promise coverage for the tort of "malicious prosecution." The tort requires: (1) the commencement of judicial proceedings by the defendant; (2) a lack of probable cause for the proceedings; (3) malice in instituting the proceedings; (4) termination of the prosecution in the plaintiff's favor; and (5) damage or injury to the plaintiff. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 272 (1997). Defendants maintain that coverage is triggered at the time of termination, because that is the final element for the accrual of the tort, and that therefore plaintiff has a duty to defend.

¶ 15    Defendants rely on *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 65 Ill. App. 3d 198 (1978), *rev'd*, 77 Ill. 2d 446 (1979) (*Security Mutual II*), for the proposition that in Illinois coverage is triggered at the time of termination of the underlying prosecution. Defendants additionally rely on Seventh Circuit cases adopting *Security Mutual*'s reasoning. The rationale is that coverage is not triggered until there is a complete tort and that the tort of malicious prosecution does not exist until the person prosecuted has been exonerated of wrongdoing. *Security Mutual*, 65 Ill. App. 3d at 206. Thus, defendants argue, because Rivera

was exonerated on December 9, 2011, which was during the first policy period, plaintiff has a duty to defend.

¶ 16     The problem with defendants' reliance on those cases is that *Security Mutual* was reversed by the supreme court in *Security Mutual II*.     In addition, this court recently noted in *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312, ¶ 18 (citing *Wilson*, 237 Ill. 2d at 455), that *Security Mutual* provides no guidance on construing an insurance policy, because it is well settled that a court construing an insurance policy must ascertain the parties' intent from the policy's language, and the appellate court's analysis in *Security Mutual* focused on the elements of a malicious-prosecution action instead of the policy's language.

¶ 17     Our recent decision in *St. Paul*, which was issued after briefing was completed in this case, is on point.     We held that, under the unambiguous language of the plaintiff's policy, the commencement of the alleged malicious prosecution was the occurrence triggering coverage, which occurrence took place outside the policy period.     *Id.* ¶ 1.     In doing so, we followed the rationale of the majority of jurisdictions that had considered this issue.

¶ 18     In *St. Paul*, Hobbs initiated a federal action against the City of Zion after murder charges against him had been dismissed.     Among other claims, Hobbs alleged malicious prosecution under Illinois law.     *Id.* ¶ 3.     The insurer, St. Paul, sought a declaration that the allegations of Hobbs's federal complaint did not trigger coverage under one of its policies because coverage of the malicious-prosecution claim was triggered by the commencement of the wrongful prosecution, not its termination in favor of the accused.     *Id.* ¶ 4.     All of the defendants took the position that coverage was triggered when all the elements of the tort of malicious prosecution, including termination in the accused's favor, were " 'in place.' "     *Id.* ¶ 13.

¶ 19    The law enforcement liability section of the policy provided that St. Paul would pay amounts that any protected person is legally required to pay as damages for covered injury or damage that (1) "results from law enforcement activities or operations by or for you," (2) "happens while this agreement is in effect," and (3) "is caused by a wrongful act that is committed while conducting law enforcement activities or operations." (Internal quotation marks omitted.) *Id.* ¶ 12. The policy defined injury or damage as bodily injury, personal injury, or property damage. It defined personal injury, in pertinent part, as injury caused by malicious prosecution. It defined a wrongful act as any act, error, or omission. *Id.*

¶ 20    In construing the language of the policy, we held that the law enforcement liability section did not require that the *offense* of malicious prosecution be committed while the policy was in effect. Rather, that section provided coverage if the *injury* caused by the malicious prosecution happened while the policy was in effect. *Id.* ¶ 14. We thus concluded that, in order to determine whether a malicious-prosecution claim triggered coverage under the law enforcement liability section, we needed to determine when the injury resulting from the malicious prosecution happened, not when the offense was committed. *Id.*

¶ 21    We set forth the elements of a malicious-prosecution claim under Illinois law and noted that the majority of courts that had addressed the issue had held that the commencement of a malicious prosecution is the event that triggers insurance coverage. *Id.* ¶ 19 (and cases cited therein).

¶ 22    We found instructive *Muller Fuel Oil Co. v. Insurance Co. of North America*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967), the first case to adopt what would become the majority position. There, the insurance policy at issue provided that the insurer would pay " 'all sums which the insured shall become Legally obligated to pay as damages.' " *Id.* at 174. The

insured argued that coverage was triggered because it could not become legally obligated to pay damages until the cause of action against it "fully ripen[ed]," which was when the alleged malicious prosecution was favorably terminated. *Id.* The insurer argued that coverage could not reasonably be expected as to tortious conduct, injury, and damage that had antedated the issuance of the policy, even though a suit for malicious prosecution could not be and was not instituted until after the issuance of the policy. *Id.*

¶ 23 The superior court reasoned that four of the five elements of the tort of malicious prosecution occur when a prosecution is initiated. *Id.* The court held that the "essence" of the tort of malicious prosecution is the wrongful conduct in making the criminal charge. *Id.* The court stated that "[i]t would be unreasonable to hold" that the parties intended the policy to provide coverage for a malicious-prosecution claim when "four of the five essential ingredients" of the claim preceded the effective date of the policy. *Id.* at 175.

¶ 24 While the language of the policy in *Muller Fuel* differed from the law enforcement liability section of the St. Paul policy, the analysis aided this court in resolving the issue of when the "injury" resulting from malicious prosecution "happens." *St. Paul*, 2014 IL App (2d) 131312, ¶ 23. According to the *Muller Fuel* court, the injury " 'flows immediately from the tortious act' " of filing a criminal complaint with malice and without probable cause. *Id.* (quoting *Muller Fuel*, 232 A.2d at 174). We agreed with this conclusion "because the favorable termination of a malicious prosecution marks the 'beginning of the judicial system's remediation' of the wrong committed, not the commencement of the injury or damage." *Id.* (quoting *Town of Newfane v. General Star National Insurance Co.*, 784 N.Y.S.2d 787, 792 (N.Y. App. Div. 2004)). We found it difficult to see how a criminal defendant's release from prison could be described as an injury in any sense of the word. *Id.* (citing *Gulf Underwriters*

*Insurance Co. v. City of Council Bluffs*, 755 F. Supp. 2d 988, 1008 (S.D. Iowa 2010)); see also *Billings v. Commerce Insurance Co.*, 936 N.E.2d 408, 413 (Mass. 2010) (noting that favorable termination of a prosecution "is not an event that causes harm").

¶ 25    In construing the language of the law enforcement liability section of the St. Paul policy, we reached the same result as in *Muller Fuel*.   The law enforcement liability section provided, in relevant part, that St. Paul would "pay amounts any protected person is legally required to pay as damages for covered injury or damage" that "happens while this agreement is in effect." (Internal quotation marks omitted.)   *Id.* ¶ 12.   The policy defined "[i]njury or damage" as including "personal injury" and defined "[p]ersonal injury" as including "injury *** caused by *** [m]alicious prosecution."   (Internal quotation marks omitted.)   *Id.*   Reading the pertinent provisions together, we concluded that, in essence, the policy provided that St. Paul would pay damages for injury that happens while the agreement is in effect and that is caused by a malicious prosecution.   *Id.* ¶ 25.   "Because injury results upon the commencement of a malicious prosecution, it is the commencement of the prosecution that triggers insurance coverage under the policy."   *Id.*

¶ 26    Like defendants in the present case, the defendants in *St. Paul* argued that " 'technically there is no injury until favorable termination.' "   *Id*. ¶ 26.   The defendants believed that a person does not suffer an injury until the prosecution is malicious, which is not determined until the person is exonerated.   *Id*.   We found this argument unpersuasive because the defendants cited no authority to support it and, as a number of courts had correctly reasoned, "a maliciously prosecuted criminal defendant suffers injury and damage immediately upon being prosecuted." *Id*. (citing *Gulf Underwriters Insurance*, 755 F. Supp. 2d at 1008 and *Harbor Insurance Co. v. Central National Insurance Co.*, 211 Cal. Rptr. 902, 907 (Cal. Ct. App. 1985)).   "When a

prosecution is commenced, the accused 'is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected.' *Id.* (quoting *Muller Fuel*, 232 A.2d at 174). " 'At that point the tortfeasor has invoked the judicial process against the victim maliciously and without probable cause, and the victim has thereby suffered damage.' " *Id.* (quoting *Harbor Insurance*, 211 Cal. Rptr. at 907). " '[T]he initial wrong and consequent harm have been committed upon commencement of the action and initial impact thereof on the defendant.' " *Id.* (quoting *Harbor Insurance*, 211 Cal. Rptr. at 907).

¶ 27    As the court in *Genesis Insurance Co. v. City of Council Bluffs*, 677 F.3d 806 (8th Cir. 2012), observed:

> "[A]lmost all of the courts that have considered the matter have accepted the insurer's argument, *even in the face of policy language that offered stronger support for appellant's position than does that contained in the policy relevant here….* We note, too, that we think it improbable that the term 'personal injury' is used in a technical sense to speak of a time when a cause of action has fully matured. *It is more likely intended to describe the time when harm begins to ensue, when injury occurs to the person, that is, in this case when the relevant lawsuit is filed.*" (Emphases in original.) *Id*. at 813-14.

¶ 28    As in *St. Paul*, our holding in the present case is limited to construing the relevant language of the policies providing coverage for malicious prosecution. *St. Paul*, 2014 IL App (2d) 131312, ¶ 34. Our task in construing an insurance policy is to ascertain the parties' intent from the language of the policy. *Id*. Courts construe a policy as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire policy. *Wilson*, 237 Ill. 2d at 456. If terms in a policy are unambiguous, courts afford them their plain, ordinary, and popular meaning. *Id*. at 455-56. If terms are ambiguous, they will be strictly

construed against the insurer. *Id*. at 456; see also *American Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475, 480 (7th Cir. 2012) ("insurers can adjust their exposure by changing the language in their policies, defining the 'occurrence' as the misconduct rather than the completed tort").

¶ 29 The two law enforcement liability policies issued by plaintiff to the City are identical. The insuring agreement of the policies provides that plaintiff will pay on behalf of the insured all damages "resulting from a wrongful act(s) which arise out of the law enforcement activities. The wrongful act(s) must occur during the policy period and within the policy territory." A "wrongful act" "means an actual or alleged error or omission, negligent act, neglect or breach of duty by an insured while conducting law enforcement activities, which result in:" (1) personal injury, or (2) bodily injury, or (3) property damage, caused by an occurrence. "Personal injury" means:

"a. assault and/or battery;

b. false arrest, detention or imprisonment, or malicious prosecution;

c. false or improper service of process;

d. humiliation or mental distress;

e. the publication or utterance of libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right to privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting by or on behalf of the named insured;

f. violation of civil rights or discrimination protected under 42 USC 1981 *et sequntia* or State Law."

¶ 30 "Occurrence" means "an event, including continuous or repeated exposure to substantially the same general harmful conditions. All claims arising out of the following events constitute one

occurrence": (1) "a riot of insurrection"; (2) "a civil disturbance resulting in an official proclamation of state of emergency"; (3) "a temporary curfew"; or (4) "martial law." Thus, as paraphrased and condensed, in relevant part, plaintiff's policies provide that plaintiff will pay damages if an insured's wrongful act occurs during the policy period and results in injury, which includes malicious prosecution. Accordingly, the initiation of the allegedly malicious prosecution is the triggering event for coverage of a malicious-prosecution claim. Based on the rationale in *St. Paul*, the wrongful act is the filing of the malicious prosecution, not its favorable termination.

¶ 31 The City argues that we should read into the policies the language that "personal injury" means "injury arising out of" malicious prosecution. The problem with this argument is that plaintiff's policies focus not on the tort of malicious prosecution, but on wrongful acts "which result in" personal injury, as the triggering event. Even though the policy language here differs from that in *St. Paul¸* the policies in both cases focus on wrongful acts resulting in injury as the triggering event. In plaintiff's policies, the specific definition of a wrongful act does not include malicious prosecution. Furthermore, defendants' interpretation ignores that the wrongful act must occur within the policy period. Simply put, the policies do not equate a wrongful act with a completed cause of action.

¶ 32 The gist of defendants' argument appears to be based on a claims-made policy. The trial court found, and it is undisputed, that the policies were occurrence-based. In an occurrence-based policy, coverage is triggered by an act or injury that occurs during the policy period. Unlike an occurrence-based policy, the discovery clause in a claims-made policy provides that coverage exists when an act or omission is discovered and brought to the attention of the insurer during the policy period, regardless of when the act or injury occurred. *Landry v.*

*Intermed Insurance Co.*, 292 S.W.3d 352, 355-56 (Mo. Ct. App. 2009); see also Black's Law Dictionary 809 (7th ed. 1999) (a claims-made policy is "[a]n agreement to indemnify against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred").

¶ 33    A typical occurrence-based policy, containing multiple references to coverage for occurrences or offenses happening during the term of the policy, reflects the intent to insure only for the insured's acts or omissions that happen during a policy period.   If favorable termination is considered as the trigger for a malicious-prosecution claim, liability could be shifted to a policy period in which the insured committed none of the acts or omissions that give rise to the claim. This would change an occurrence-based policy into something similar to a claims-made policy; the policy would cover prior acts or omissions that merely happen to accrue as a cause of action while the policy is in effect, just as a claims-made policy covers claims filed during a policy period, regardless of when the underlying acts or omissions occurred.   The majority position is more consistent with the intent of the parties to an occurrence-based policy.

¶ 34    Defendants rely on the minority position taken in *American Safety*, 678 F.3d 475, and *National Casualty Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010).   As stated, neither case is persuasive given their reliance on *Security Mutual*.   Furthermore, in *American Safety*, the policy identified as the "occurrence" the tort of malicious prosecution instead of the misconduct giving rise to the tort.   *American Safety*, 678 F.3d at 479.   In the present case, plaintiff's policies, unlike American Safety's policy, define the injury as including malicious prosecution emanating from wrongful acts.   See *St. Paul*, 2014 IL App (2d) 131312, ¶ 32 ("the section of the insurance policy at issue defines as the occurrence the injury caused by malicious prosecution, not the tort of malicious prosecution").   In *McFatridge*, the court never analyzed the policy language in the

context of the offense of malicious prosecution, as it relied on *Security Mutual* in concluding that the offense depends upon the invalidation of the underlying conviction. *McFatridge*, 604 F.3d at 344-45.

¶ 35    Defendants note that the policies do not state that all enumerated causes of action related to a wrongful conviction should be considered as one occurrence that dates back to the initiation of the malicious prosecution. The policies' definition of "occurrence" provides an exhaustive list of certain events that constitute one occurrence, and that list does not include malicious prosecution. Thus, defendants argue, Rivera's malicious-prosecution and other claims should not be considered as a single occurrence and are entitled to separate analyses of when coverage was triggered.

¶ 36    Indeed, the policies do not require that all of Rivera's claims arise from a single occurrence and must have the same trigger date as his malicious-prosecution claim. But the occurrence language is irrelevant to determining whether there is one or more trigger date in this case. As the trial court pointed out, "the occurrence definition becomes significant when the issue is the limits of liability," as "[t]he policies provide that liability for a single occurrence is limited to one million dollars, with a two million dollar aggregate policy limit." Thus, the "occurrence" language comes into play only if a number of the claims trigger coverage. Because we determine that coverage for malicious prosecution was not triggered during the policy periods, we must determine only if any of the other allegations trigger coverage.

¶ 37                    C. Trigger of Coverage for Other Allegations

¶ 38    Defendants argue that coverage for other allegations in Rivera's complaint, such as conspiracy, failure to intervene, intentional infliction of emotional distress, and defamation, was triggered during the first policy period. Under the policies, "personal injury" includes false

arrest, detention, or imprisonment, and those claims have the same trigger date as the malicious-prosecution claim. Additionally, Rivera's defamation claim alleges that the defamatory remarks were made by Officer Tessman during an interview. But the problem with that claim is that the remarks did not involve law enforcement activities. Furthermore, Rivera did not allege that the officer defamed him while conducting law enforcement activities, which takes that claim outside of the terms of the policies.

¶ 39 Rivera also alleged that the City committed violations of *Brady v. Maryland*, 373 U.S. 83 (1963), amounting to due-process claims under 42 U.S.C. § 1983. Rivera contends that there is a duty to disclose exculpatory evidence before, during, and after trial. He asserts that each day that the City suppressed evidence to keep him in prison constituted an independent *Brady* violation and a separate occurrence under the policies. In other words, Rivera argues that the alleged *Brady* violations are independent triggering events that occurred across both policy periods and are separate acts that increased the City's liability.

¶ 40 We find that all of the acts or omissions alleged to have occurred after the date Rivera was charged are really continuations of the same alleged harm. The purported ongoing acts of conspiracy that prolonged Rivera's incarceration were not new harmful acts. Instead, they were the continuing effects of Rivera's arrest and ultimately his convictions of rape and murder.

¶ 41 In *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407 (2006), the supreme court considered whether claims for 195 instances of mercury contamination constituted a single occurrence under the insurance policies issued to Nicor for the relevant time periods. The contamination occurred over a period of several years, while Nicor gradually replaced old gas meter regulators that contained mercury with new ones that did not. In some instances, the premises where the new regulators were installed became contaminated. The

court stated that the "cause theory" represents the law of Illinois for the purpose of determining whether multiple injuries or claims constitute one or more occurrences under an occurrence-based policy. *Id.* at 419-20. The court observed that the cause theory looks to whether the damage resulted from the "same conditions and was inflicted as part of an unbroken and uninterrupted continuum [that] would yield the conclusion that there was only one occurrence." *Id.* at 418-19.

¶ 42 The court found that the mercury contamination did not arise from an inherent defect in the meters that were replaced or from a system-wide policy or procedure for replacing the meters. *Id.* at 433. The court also stated that there was no common cause of the spills that resulted in the contamination and that the spills occurred under a variety of different circumstances. Accordingly, the court concluded that the claims arising from the spills could not be viewed as a single occurrence. *Id.* at 434.

¶ 43 The court contrasted *Nicor* with the asbestos case of *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598 (1994), where the insured's liability was not based on the installation of the products at the various sites involved in the suit. Rather, the operative cause was "the continuing manufacture and sale of asbestos-containing products." *Id.* at 649.

¶ 44 Applying the cause theory as set forth in *Nicor* to the present case clearly establishes that this case presented a single cause and therefore a single occurrence. The alleged *Brady* violations that contributed to Rivera's arrest and convictions might have had an ongoing effect over a period of time, but Rivera's injury resulted from the "same conditions and was inflicted as part of an unbroken and uninterrupted continuum." *Nicor*, 223 Ill. 2d at 419.

¶ 45                                  D. Illusory Coverage

¶ 46    Defendants also assert that the trial court's holding renders the coverage illusory. However, that is not the case, where the malicious prosecution did not take place during the policy periods.    If the charges had been filed during a policy period and they were later determined to be the result of malicious prosecution, plaintiff would be required to provide coverage.

¶ 47                                    E. Premature Ruling

¶ 48    Defendants argue that the trial court's ruling was premature because it could result in inconsistent opinions from different courts concerning coverage in this case.    The City argues that there could be inconsistent rulings on the triggering issue, leaving the City without coverage for Rivera's claims. However, plaintiff is correct that an insurance company that has doubts about whether it has a duty to defend has the option to defend under a reservation of rights or to file a declaratory judgment action.    Plaintiff was well within its rights and, in fact, was prudent in seeking a resolution of this issue in a declaratory judgment.

¶ 49                                    III. CONCLUSION

¶ 50    For the preceding reasons, we conclude that Rivera's malicious-prosecution claim did not trigger coverage under the insurance policies that plaintiff issued to the City, because the prosecution was commenced before the inception of the policies.    Coverage for Rivera's other allegations also was not triggered under the policies, and the policies do not provide illusory coverage.    Finally, the trial court's ruling in this case was not premature.    Accordingly, we affirm the order of the circuit court of Lake County granting plaintiff's motion for judgment on the pleadings.

¶ 51    Affirmed.