2018 IL App (1st) 171532

SIXTH DIVISION
MAY 11, 2018

No. 1-17-1532

| | | |
|---|---|---|
| FIRST MERCURY INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counter-Defendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL J. CIOLINO; PAUL J. CIOLINO AND | ) | |
| ASSOCIATES, INC.; PAUL J. CIOLINO AND | ) | No. 15 CH 05558 |
| ASSOCIATES, LLC; and Alstory Simon, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Paul J. Ciolino; Paul J. Ciolino and Associates, Inc.; and | ) | Honorable |
| Paul J. Ciolino and Associates, LLC; Defendants  and | ) | Sanjay T. Tailor, |
| Counter-Plaintiffs-Appellants). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1     In this insurance coverage dispute, plaintiff First Mercury Insurance Company (First Mercury) filed a declaratory judgment action against its insured, defendants Paul J. Ciolino, Paul J. Ciolino & Associates, Inc., and Paul J. Ciolino & Associates, LLC (collectively, Ciolino). Ciolino filed a six-count counterclaim. The circuit court dismissed five counts of the counterclaim and in a subsequent order granted summary judgment in favor of First Mercury, including with respect to the remaining count of the counterclaim. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                  BACKGROUND

¶ 3      The crux of this insurance coverage dispute is whether First Mercury owed coverage to its insured, Ciolino, in an underlying lawsuit for malicious prosecution initiated by Alstory Simon. The complaint commencing the underlying action (*Simon* action) was filed in federal court in February 2015 against Northwestern University (Northwestern), Davis Protess, Paul J. Ciolino, and Jack P. Rimland. Simon v. Northwestern University, No. 15-cv-1433 (N.D. Ill.). According to the *Simon* complaint, Protess was a professor at Northwestern who taught an investigative journalism class, Ciolino acted as a private investigator for Northwestern, and Rimland was an attorney. Simon alleged that in the late 1990s, these defendants "conspired to frame Simon" for a 1982 double murder "in order to secure the release of the real killer, Anthony Porter," who had been convicted of the crime. Simon's complaint included counts for malicious prosecution and conspiracy against Ciolino.

¶ 4      Simon's complaint alleged that Protess instructed his students to investigate the murder case and "develop evidence of Porter's innocence." Simon alleged that "Northwestern, through its employees and/or agents Protess and Ciolino, intentionally manufactured false witness statements against Simon and then used the fabricated evidence, along with terrifying threats and other illegal and deceitful tactics, to coerce a knowing false confession from Simon." Among other acts, Simon alleged that in February 1999, Ciolino "illegally impersonated a police officer and, while armed with a handgun," entered Simon's house and "obtained a false confession from Simon to the murder" through threats, false evidence, and "other illegal tactics."

¶ 5      According to Simon's complaint, in March 1999 a grand jury indicted him based on "the false evidence manufactured by the Northwestern Team." Simon alleged that, as a direct result of

the *Simon* defendants' conduct, he pleaded guilty in September 1999 to the murder of one of the victims and the voluntary manslaughter of the second victim.

¶ 6 In October 2013, the Cook County State's Attorney's office announced that it would re-investigate the murder case. In October 2014, the State's Attorney's office requested that the circuit court vacate the murder and voluntary manslaughter charges against Simon. On the same day, Simon was released.

¶ 7 It is undisputed that First Mercury was *not* Ciolino's insurer when Simon was allegedly framed or at the time of his 1999 guilty plea and conviction. However, First Mercury was Ciolino's insurer at the time of Simon's eventual exoneration in 2014.

¶ 8 Beginning in 2006, First Mercury issued a number of policies to Ciolino, each with a one-year term. These included a policy in effect at the time of Simon's 2014 exoneration (the 2014-15 policy). The 2014-15 policy provided four coverages: "Coverage A—Bodily Injury and Property Damage Liability"; "Coverage B—Personal and Advertising Injury Liability"; "Coverage C—Medical Payments" and "Coverage D—Errors and Omissions." This appeal concerns application of Coverage B, under which First Mercury agreed:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' or 'advertising injury' to which this insurance does not apply."

Coverage B also specified that it applied to " 'Personal injury' caused by an offense arising out of your business *** but only if the offense was committed *** during the policy period."

¶ 9    The 2014-15 policy elsewhere defined the term "personal injury" to mean "injury, other than 'bodily injury,' arising out of one or more of the following offenses," followed by a list including "malicious prosecution." However, the 2014-15 policy does not define the term "offense."

¶ 10    In April 2015, shortly after the *Simon* action was commenced, First Mercury filed a complaint in the circuit court of Cook County for declaratory judgment against Ciolino.[1] First Mercury's complaint pleaded that the alleged "offense" in the *Simon* action occurred outside the policy period of any First Mercury policy issued to Ciolino. First Mercury alleged that Coverage B of the 2014-15 policy did not apply because the *Simon* complaint "asserts no claim for 'personal injury' caused by an offense committed during the policy periods." Thus, First Mercury alleged that it owed no duty to defend or indemnify Ciolino in the *Simon* lawsuit.

¶ 11    On December 15, 2015, Ciolino filed a verified counterclaim containing six counts. Each of those counts incorporated allegations that in the spring of 2006, Ciolino contacted an agent of First Mercury and "asked if First Mercury's policy would insure against claims of malicious prosecution that arose during the term of the policy." Ciolino alleged that "[h]e was told that the policy would insure against such claims" and that he relied on that representation. The counterclaim alleged that First Mercury knew or should have known that "in Illinois a claim for malicious prosecution does not exist" until "the termination of the proceeding in favor of the plaintiff." Ciolino thus alleged that "the relevant event for the purpose of determining insurance coverage is exoneration, the final legal element of the [malicious prosecution] claim."

---

[1]Simon was named as a defendant in the declaratory judgment complaint, but he is not a party to this appeal.

¶ 12    Count I of the counterclaim, for breach of contract, alleged that First Mercury breached the 2014-15 policy by refusing to defend and indemnify Ciolino in the *Simon* action. Count II pleaded in the alternative that the 2014-15 policy should be reformed to afford coverage for the *Simon* case. Count III pleaded "promissory estoppel" in that Ciolino relied on First Mercury's "unambiguous promise that it would provide insurance coverage against claims of malicious prosecution that arose during the policy period." Ciolino also pleaded a count for "equitable estoppel" (count IV). Counts V and VI alleged fraud and negligent misrepresentation.

¶ 13    In February 2016, First Mercury moved to dismiss all six counts of the counterclaim pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)) for failure to state a cause of action. On July 26, 2016, the trial court granted the motion only with respect to counts II through VI but declined to dismiss count I for breach of contract.

¶ 14    In March 2017, First Mercury and Ciolino filed cross-motions for summary judgment. Ciolino's motion urged that it was entitled to coverage under Coverage B, emphasizing that the policy applied to personal injury caused by "an offense" if "committed" in the policy period. Ciolino claimed that coverage applied "when the offense was completed" and that the malicious prosecution alleged by Simon was not completed until his 2014 exoneration.

¶ 15    In its motion for summary judgment, First Mercury argued that the relevant question was whether the "trigger of coverage" for an underlying malicious prosecution claim was the date on which the underlying prosecution commenced or the date of the exoneration. First Mercury contended that multiple appellate court decisions held that the commencement of the prosecution is the triggering event. First Mercury argued that because the alleged malicious prosecution against Simon commenced in 1999—before First Mercury issued any policy to Ciolino—it did not owe coverage and did not breach the 2014-15 policy by refusing to defend the *Simon* action.

Thus, First Mercury sought summary judgment in its favor with respect to both its declaratory judgment complaint as well as the remaining breach of contract count of Ciolino's counterclaim.

¶ 16    The cross-motions were argued at a hearing on June 1, 2017. On that date, the trial court entered an order that (1) granted First Mercury's motion for summary judgment, (2) denied Ciolino's cross-motion for summary judgment, and (3) dismissed the case with prejudice. On June 27, 2017, Ciolino filed a notice of appeal.

¶ 17                                    ANALYSIS

¶ 18    We note that we have jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015) because Ciolino filed a timely notice of appeal from the June 1, 2017, final order. We also note that, to the extent Ciolino's brief does not address certain orders referenced in his notice of appeal, review of those orders has been forfeited.[2] Thus, our review is limited to Ciolino's challenges to (1) the trial court's June 1, 2017, order granting summary judgment to First Mercury and denying Ciolino's cross-motion and (2) the prior order of July 26, 2016, dismissing counts II through VI of Ciolino's counterclaim.

¶ 19    We turn to Ciolino's primary contention that the trial court erred in granting summary judgment to First Mercury. Ciolino asserts that First Mercury owed coverage for the underlying *Simon* action under Coverage B of the 2014-15 policy, which applies to an "offense" that is committed during the policy period.

¶ 20    Ciolino does not dispute that the alleged conduct leading to Simon's conviction occurred in the late 1990s. Nonetheless, he contends that the 2014-15 policy affords coverage because the "offense" of malicious prosecution was not completed until Simon's exoneration in 2014.

---

[2]The notice of appeal stated that Ciolino appealed from the June 1, 2017, order "and all adverse rulings therein, including the order of July 26, 2016 which struck the Appellant's affirmative defenses *** , and the order of December 2, 2016, which denied Appellant's motion to compel." As Ciolino's brief does not mention the affirmative defenses or the motion to compel, he has forfeited review of the corresponding orders. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017).

Emphasizing the use of the word "offense" in the policy, he reasons that coverage is triggered at the completion of all necessary elements for the *tort* of malicious prosecution under Illinois law. Because the termination of the prosecution in the plaintiff's favor is one of the elements of the tort (see *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267 (1997)), Ciolino claims that "[e]xoneration is the last act necessary to trigger coverage." He thus claims that the underlying "offense" alleged by Simon was not completed until his exoneration in 2014, within the 2014-15 policy's period of coverage.

¶ 21    Ciolino claims his interpretation of Coverage B is further supported by the terminology of other provisions of the 2014-15 policy. He emphasizes that the policy uses the term "occurrence" in describing Coverage A and Coverage D. He reasons that the use of the term "offense" in Coverage B indicates that "First Mercury made a distinction *** as to when coverage would be provided" for the sort of injury included in Coverage B. Thus, he contends that all legal elements of the "offense" must be completed within the policy period for that coverage to apply.

¶ 22    In response, First Mercury argues that the relevant question is whether the trigger for coverage of an underlying malicious prosecution claim is "the date on which the prosecution commenced *** or the date on which the underlying plaintiff subsequently was exonerated." First Mercury relies on appellate court decisions holding that the triggering event is the commencement of the prosecution, rather than exoneration. First Mercury argues that exoneration is "an act of remediation" rather than part of the "offense" allegedly committed by Ciolino. First Mercury thus maintains that the "offense" alleged by Simon predated the 2014-15 policy period, such that it does not owe coverage for the *Simon* action.

¶ 23 "Summary judgment is appropriate 'if the pleadings, depositions, and admissions on file, *** show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]" *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010). Where parties to an insurance coverage declaratory judgment action submit cross-motions for summary judgment, the parties "agree that no factual issues exist and that the disposition of [the case] turns only on our resolution of purely legal issues. [Citation.] Accordingly, our review proceeds *de novo.*" *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010).

¶ 24 "To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. [Citations.] If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). To interpret insurance policies, our supreme court instructs:

> "Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. [Citations.] If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. [Citations.] The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. [Citations.] A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. [Citation.] Rather, an ambiguity will be found where the

policy language is susceptible to more than one reasonable interpretation. [Citations.]" *Founders*, 237 Ill. 2d at 433.

"If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.*" (Emphasis in original.) *Outboard Marine*, 154 Ill. 2d at 108.

¶ 25    We thus face the issue of whether the *Simon* complaint alleges an "offense" of malicious prosecution that was "committed" during the 2014-15 policy period. The parties' dispute turns on whether the term "offense" is triggered by Ciolino's alleged conduct in *commencing* the malicious prosecution against Simon in 1999 or whether it necessarily includes the eventual *exoneration* of Simon in 2014.

¶ 26    First Mercury urges that we rely on decisions of our court in other insurance coverage actions that have concluded that the trigger date for coverage was the *commencement* of the alleged malicious prosecution, rather than the date of exoneration. The first of these is *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312 (*Zion*). Similar to the facts of this case, the plaintiff in the underlying action in that case was charged with murder before the relevant policy period, but he was exonerated within the policy period. *Id.* ¶ 4. The relevant policy language covered " 'damages for covered injury' " that " 'happen[ed] while this agreement is in effect' " and were " 'caused by a wrongful act.' " *Id.* ¶ 12. The *Zion* court reasoned that "a maliciously prosecuted criminal defendant suffers injury and damage immediately upon being prosecuted," such that the injury predated the policy period. *Id.* ¶ 26. That decision also rejected the suggestion that there was no injury until the *tort* of malicious prosecution was completed. *Id.* ¶ 27 ("Simply because a cause of action for malicious prosecution does not accrue until the prosecution has been terminated does not mean that the injury does not occur until the prosecution has been terminated." ).

¶ 27    Our court reached a similar result in *Indian Harbor Insurance Co. v. City of Waukegan*, 2015 IL App (2d) 140293 (*Indian Harbor*). As in *Zion*, the underlying plaintiff in *Indian Harbor* was wrongfully convicted before the policy period but exonerated during the policy period. The insured sought coverage for the subsequent malicious prosecution claim, under two policies covering " 'damages resulting from a wrongful act(s)' " arising out of law enforcement activities that " 'occur during the policy period.' " *Id.* ¶ 4. The insured argued that coverage was "triggered at the time of termination [of the prosecution], because that is the final element for the accrual of the tort." *Id.* ¶ 14. The *Indian Harbor* court disagreed, finding that *Zion* was "on point" in concluding that "the commencement of the alleged malicious prosecution" triggered coverage. *Id.* ¶ 17. The *Indian Harbor* court also rejected the claim that a "wrongful act" required a completed *tort*, finding "the policies do not equate a wrongful act with a completed cause of action." *Id.* ¶ 31.

¶ 28    The Fourth District of our court applied the same reasoning in *County of McLean v. States Self-Insurers Risk Retention Group, Inc.*, 2015 IL App (4th) 140628 (*McLean*), where the underlying plaintiff's 1995 conviction was reversed and the prosecution terminated in 2009. *Id.* ¶ 1. In response to the ensuing malicious prosecution claim, the *McLean* plaintiffs claimed they were entitled to coverage under a 2008-09 policy for damages from " '*personal injury*' " that resulted from " 'an *occurrence* during the *policy period*.' " *Id.* ¶ 16. The *McLean* court agreed with the insurer that it did not owe coverage because the " 'occurrence' " of the alleged " 'personal injury' " was each underlying plaintiff's "arrest and prosecution, not his exoneration." *Id.* ¶ 4. *McLean* rejected the plaintiffs' argument that "the malicious prosecution 'took place' when the State dismissed the charges" against him. *Id.* ¶ 32. The court explained:

"[P]laintiffs erroneously equate the 'personal injury' of 'malicious prosecution' (as the *policy* uses those terms) with the common-law elements of the tort of malicious prosecution. However, the two are not the same. *** Construing the terms as a whole, the policy clearly defines 'personal injury' as '*injury*' *** *caused by* *** malicious prosecution.' *** In other words, the event that triggers coverage is the actual *injury* suffered by the prosecuted party, not the accrual of the *tort* of malicious prosecution." (Emphases in original.) *Id.* ¶ 33.

¶ 29    Ciolino seeks to distinguish this precedent, primarily because the policies in those cases did not use the term "offense." He argues that "the only 'offense' would be a tort, only occurring after exoneration." He claims that coverage for Simon's action was triggered "when the offense was completed" in 2014, "when the last necessary element—exoneration—happened."

¶ 30    We disagree. Although we recognize that Coverage B uses the term "offense," we are not persuaded that this distinction compels us to depart from the reasoning of the precedent discussed. Specifically, we are not convinced that the policy's use of the word "offense" indicates the parties' intent that coverage would only be triggered upon fulfillment of all elements of a tort claim under Illinois law. Rather, the more straightforward reading of this term indicates that coverage depends upon whether the insured's offensive *conduct* was committed during the policy period. We emphasize our supreme court's directive that "[i]f the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular* meaning." (Emphasis in original.) *Outboard Marine*, 154 Ill. 2d at 108. Ciolino does not contend that the term "offense" is ambiguous. Thus, applying the common and popular understanding of the

word, we conclude that the policy refers to a wrongful act or conduct committed during the policy period, regardless of whether the elements of a tort have accrued.[3]

¶ 31 Ciolino does not point to any other language in the 2014-15 policy indicating any intent to limit the meaning of "offense" by requiring the completion of tort law elements. Thus, we will not assume that the policy incorporates tort law. See *St. Paul Fire & Marine Insurance Co. v. City of Waukegan*, 2017 IL App (2d) 160381, ¶ 48 ("[T]he time of occurrence in insurance law is different from the time of accrual in tort law. In insurance law, the time of occurrence is used to determine when the operative terms of the policy provide coverage. In tort law, the time of accrual is used to determine when the statute of limitations begins to run, a separate consideration ***.").

¶ 32 Further, adopting Ciolino's interpretation would distort the common, popular understanding of what is meant by an "offense." It appears that Ciolino's interpretation includes exoneration. It defies common sense to construe the exoneration of an innocent person as "offensive" or wrongful conduct. See *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 24 (" 'the favorable termination of a malicious prosecution marks the "beginning of the judicial system's remediation" of the wrong committed, not the commencement of the injury or damage.' [Citations.]"); *McLean*, 2015 IL App (4th) 140628, ¶ 34 ( "To say that Beaman suffered his 'injury' when he was exonerated would be to ignore the plain and ordinary meaning of the term 'injury.' ").

---

[3]The Merriam-Webster dictionary indicates that term "offense" is primarily used to mean "something that outrages the moral or physical senses"; "the act of attacking"; "the act of displeasing or affronting" or "a breach of a moral or social code." Offense, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/offense (last visited May 2, 2018). Only after those meanings does Merriam-Webster recognize that one of the secondary definitions of "offense" is "an infraction of law." *Id.*

¶ 33    We also note that Ciolino does not cite any recent Illinois case law that departs from the reasoning of the discussed precedent. The primary decision that he relies upon is a federal case that precedes the precedent, *American Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475 (7th Cir. 2012) (*American Safety*). That case was another malicious prosecution coverage dispute where the exoneration (but not the conviction) occurred during the relevant policy period. After noting that the "claim for malicious prosecution accrued in 2002 with his exoneration" (*id.* at 477), the Seventh Circuit concluded that the relevant "occurrence" took place upon exoneration, thereby implicating coverage. In that case, the Seventh Circuit cited its prior decision in *National Casualty Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010), which in turn, relied on our court's 1978 decision in *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 65 Ill. App. 3d 198 (1978) *rev'd on other grounds*, 77 Ill. 2d 446 (1979).[4] *Security Mutual* stood for the rule that "the relevant 'occurrence' for the purpose of determining insurance coverage is exoneration, the final element of the legal claim." *American Safety*, 678 F.3d at 478. The Seventh Circuit emphasized that, as of 2012, *Security Mutual* was the "only Illinois appellate decision on the issue." *Id.* at 479. In turn, *American Safety* concluded that the " 'occurrence' " under the relevant policy occurred upon exoneration, because "the tort occurs when its last element comes into being." *Id.*

¶ 34    Ciolino's reliance on *American Safety* is unpersuasive, as that case represented the Seventh Circuit's prediction of Illinois law based on the 1978 *Security Mutual* decision, which in 2012 was the only Illinois decision on point. That is no longer the case, in light of the more recent decisions already discussed, two of which explicitly criticized *Security Mutual*. See *Indian Harbor*, 2015 IL App (2d) 140293, ¶¶ 15-16; *Zion*, 2014 IL App (2d) 131312, ¶ 18.

---

[4]The Seventh Circuit explained that our 1978 decision in *Security Mutual* was reversed by our supreme court "on the basis of an arbitration clause rather than any disagreement with the court's resolution of the merits." *American Safety*, 678 F.3d at 478.

¶ 35 Consistent with recent Illinois precedent, the coverage question is governed by the plain language of the policy rather than by the elements of the tort of malicious prosecution. We conclude that the term "offense" in Coverage B of the 2014-15 policy refers to the alleged wrongful conduct by the insured. Applied to the *Simon* complaint, the "offense" was the misconduct allegedly committed by Ciolino leading to Simon's 1999 plea and conviction, which clearly predated the 2014-15 policy. On the other hand, Simon's 2014 exoneration was not part of any "offense" committed by Ciolino, just as an exoneration cannot logically be considered part of an "injury" to the underlying plaintiff. See *Zion*, 2014 IL App (2d) 131312, ¶ 23; *McLean*, 2015 IL App (4th) 140628, ¶ 34.

¶ 36 As the alleged "offense" did not occur during the 2014-15 policy period, First Mercury did not owe coverage for the *Simon* action and was entitled to summary judgment. For the same reasons, Ciolino could not prove that First Mercury breached the 2014-15 policy by refusing to defend the *Simon* action, as alleged by count I of the counterclaim. Accordingly, we affirm the trial court's order of June 1, 2017.

¶ 37 We turn to Ciolino's claims that the trial court erred in dismissing counts II through VI of his counterclaim, pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2016). Ciolino maintains that the dismissed counts adequately "pleaded causes of action in reformation, promissory and equitable estoppel, negligent misrepresentation and fraud."

¶ 38 "A section 2-615 motion admits all well-pleaded facts as true, and dismissal is proper when it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. [Citation.] In ruling on a section 2-615 motion, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff. [Citation.] We

14

review a dismissal under section 2-615 *de novo.* [Citation.]" *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 14.

¶ 39    We first address the fraud count of the counterclaim (count V). "To establish a claim for common law fraud, a plaintiff must allege: (1) a false statement of material fact, (2) the party making the statement knew or believed it to be untrue, (3) the party to whom the statement was made had a right to rely on the statement, (4) the party to whom the statement was made did rely on the statement, (5) the statement was made for the purpose of inducing the other party to act, and (6) the reliance by the person to whom the statement was made led to that person's injury. [Citations.]" *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 116 (2009). "There is a high standard of specificity for pleading claims of fraud" and "[t]he pleadings must contain specific allegations from which fraud is the necessary or probable inference, including what representations were made, when they were made, who made the representations, and to whom they were made." *Id.* at 116-17.

> "A party pleading fraud must allege facts sufficient to establish that its reliance on the alleged misrepresentations was justified. [Citation.] In determining whether reliance was justifiable, all of the facts that the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account.
> [Citation.]" *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 176-77 (1997).

¶ 40    There are multiple problems with Ciolino's fraud claim. First, it does not describe the alleged misrepresentations with sufficient specificity. Ciolino claims that at some point in 2006, he asked an unnamed agent of First Mercury "if First Mercury's policy would insure against claims of malicious prosecution that arose during the term of the policy" and that he was assured that "the policy would insure against such claims." These allegations do not meet the heightened

pleading standard for fraud, as they do not identity with specificity (1) the date when the statement was made, (2) the identity of the "agent" who made the statement, or (3) the location or manner in which the statement was made. Further, the allegation merely refers to "the policy" but does not specify *which* policy or policies were being described.

¶ 41    Furthermore, Ciolino does not plead facts supporting justifiable reliance on the misrepresentation. He essentially pleads that he was misinformed by First Mercury's agent about the terms of a policy that he entered into, yet he does not suggest that he was denied an opportunity to review the written terms of that policy. An individual is assumed to have read and understood the terms of a contract that he has entered into. "Illinois law on this question is long-standing and consistent. The supreme court held in *Black v. Wabash, St. Louis & Pacific Ry. Co.*, 111 Ill. 351, 358 (1884), that a competent adult is charged with knowledge of and assent to a document the adult signs and that ignorance of its content does not avoid its effect. That principle has been consistently reiterated by the supreme court and by the appellate court." *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 121. Our court has specifically recognized an insured's duty to read an insurance policy. *Perelman v. Fisher*, 298 Ill. App. 3d 1007, 1011 (1998) ("[W]hen an insured sues his or her insurer after failing to note a discrepancy between the policy issued and received and the policy requested or expected, the insured will be bound by the contract terms because he or she is under a duty to read the policy ***.") Accordingly, Ciolino cannot claim that he *reasonably* relied on statements by an unnamed agent describing the policy in asserting his belief that its coverage was any broader than its actual, written terms.

¶ 42    Ciolino does not allege reasonable reliance for an independent reason. The fraud claim relies on a purported statement by First Mercury's agent in 2006, but the only policy for which Ciolino seeks coverage is the 2014-15 policy. Ciolino could not have reasonably relied on a

statement in 2006 to influence his understanding of the scope of the 2014-15 policy, issued several years later. Thus, the fraud count was properly dismissed.

¶ 43    The element of reliance also defeats the negligent misrepresentation claim in count VI, which is based on the same alleged misrepresentations as the fraud count. "To state a cause of action for negligent misrepresentation, plaintiffs must allege: (1) a false statement of material fact; (2) defendant's carelessness or negligence in ascertaining the truth of the statement; (3) an intention to induce plaintiffs to act; (4) reasonable reliance on the truth of the statement by plaintiffs; and (5) damage to plaintiffs resulting from this reliance. [Citation.]" *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 87. Thus, negligent misrepresentation "has essentially the same elements [as a fraud claim], except that the defendant need not know that the statement is false; rather his own carelessness or negligence in ascertaining the truth of the statement will suffice. [Citation.]" *Avon Hardware Co.*, 2013 IL App (1st) 130750, ¶ 15.

¶ 44    As discussed with respect to the fraud count, Ciolino fails to plead reasonable reliance on the alleged false statements concerning the nature of coverage for malicious prosecution. Without that element, the negligent misrepresentation count was defective. We thus affirm the dismissal of count VI on that basis.

¶ 45    We next turn to count II, under which Ciolino seeks reformation of the 2014-15 policy so that it provides coverage for the *Simon* action. That count is premised on purported "fraudulent misrepresentations" contained in the various policies issued by First Mercury from 2006 to 2014, which the counterclaim characterizes as "written offers."[5] Ciolino's reformation count alleges that "First Mercury asserted that the legal effect of the [policies] would provide insurance against claims of malicious prosecution" when it knew that this was not the "legal effect" of the policies.

---

[5]The counterclaim does not attach exhibits but indicates that the "written offers" are exhibits B through I to First Mercury's declaratory judgment complaint, which consist of the policies issued to Ciolino.

Ciolino pleads that he "did not realize that the legal effect of the insurance policies was not as asserted."

¶ 46    "An action for reformation is in essence an action to change a written agreement to conform the intention of the parties and the agreement between them. [Citation.] To state a cause of action for reformation of a contract, a plaintiff must allege: (1) the identity of the parties and the existence and substance of an agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the written agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) mutual mistake or some other basis for reformation. [Citation.]" *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 31. "Reformation of a contract should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties and that there has been either a mutual mistake or a mistake by one party and fraud by the other. [Citation.]" *Elson v. State Farm Fire & Casualty Co.*, 295 Ill. App. 3d 1, 15 (1998).

¶ 47    Ciolino's reformation count does not allege any "mutual mistake." Rather, it is premised on purported "fraudulent misrepresentations" contained within the various policies issued by First Mercury. However, Ciolino does not identify any actual misrepresentation in those written policies. Rather, he merely pleads his own mistake in failing to "realize" the "legal effect" of the policies' terms. Simply put, one party's failure to understand a contract term is not equivalent to a fraudulent misrepresentation by the other contracting party. As Ciolino does not plead an underlying fraud or a mutual mistake, the reformation count fails. Thus, count II was properly dismissed.

¶ 48    We turn to count III of the counterclaim, alleging promissory estoppel. In that count, Ciolino alleges that First Mercury made "an unambiguous promise that it would provide

insurance coverage against claims of malicious prosecution that arose during the policy period," that Ciolino relied on such promise to his detriment, and that his reliance "was expected and foreseeable."

¶ 49    To establish a claim of promissory estoppel, "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. [Citation.]" *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009). This reliance element "can alternatively be described as demonstrating plaintiff's justifiable or reasonable reliance on the promise, similar[ ] to the elements required in a claim for fraud." *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 91. As discussed above with respect to the fraud count, we do not find that Ciolino can plead reasonable reliance on alleged statements that the coverage was any broader than the written terms of the 2014-15 policy.

¶ 50    Moreover, dismissal of the promissory estoppel count is independently warranted, since the existence of a contract (the 2014-15 policy) is undisputed. "Application of promissory estoppel is proper only in the absence of an express agreement. [Citations.]" *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 92. "[O]nce it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel." *Prentice v. UDC Advisory Services, Inc.*, 271 Ill. App. 3d 505, 512 (1995). Ciolino has acknowledged in the trial court and on appeal that the 2014-15 policy was an enforceable contract. Thus, count III was properly dismissed.

¶ 51    Finally, we address count IV of the counterclaim, which asserts equitable estoppel. Similar to the other counts, this count is premised on allegations that First Mercury "misrepresented that it would provide insurance coverage against claims of malicious prosecution that arose during the policy period," that First Mercury knew this was untrue, and that Ciolino "reasonably relied upon the representation in good faith to [his] detriment."

¶ 52    The elements of equitable estoppel are: " '(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel *reasonably relied upon the representations* in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.' " (Emphasis added.) *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 36 (quoting *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001)).

¶ 53    As discussed with respect to the fraud count, Ciolino cannot claim reasonable reliance on false representations describing the extent of coverage under First Mercury's policies, when he was under a duty to read those policies and "inform the insurer of any discrepancy" between the policy issued and the policy he expected. *Perelman*, 298 Ill. App. 3d at 1011. Thus, count IV was also properly dismissed.

¶ 54    For the foregoing reasons, we affirm (1) the entry of summary judgment in First Mercury's favor with respect to its declaratory judgment complaint and count I of Ciolino's

counterclaim, as well as (2) the trial court's dismissal of the remaining counts of Ciolino's counterclaim.

¶ 55    Affirmed.